PER CURIAM.
We have for review the recommendation of the Judicial Qualifications Commission (JQC) that Judge Cynthia A. Holloway be disciplined. We have jurisdiction, see art. Y, § 12, Fla. Const., and approve the findings and the recommended sanctions.[1]
I. BACKGROUND
Most of the charges levied against Judge Holloway stem in some manner from a severely contested custody dispute between a close friend of Judge Holloway and the father of that friend’s minor daughter. The custody dispute involved alleged sexual abuse of the minor daughter by the father, and Judge Holloway was a witness under subpoena in the case. The amended charges levied by the Investigative Panel against Judge Holloway and the Hearing Panel’s guilt findings were as follows:

CHARGE:

1. You were a witness in the case of Adair v. Johnson, No. 97-11697, Circuit Court of Hillsborough County (“the Adair case”), and a close friend of Ms. Robin Adair, the petitioner in that case. During the pendency of this case you abused your powers as a judge, and improperly utilized the prestige of your office by the following actions:
(a) On or about February 24, 2000, you telephoned Detective John Yar-atch of the Tampa Police Department, who was then conducting a criminal investigation involving the parties in the Adair case, and sought to influence his investigation, inter alia, by suggesting that an interview of the daughter of the parties be held at the Child Advocacy Center, by furnishing Det. Yaratch with your cellular phone number, and by requesting that he keep you apprised on developments in the case.

PANEL FINDING:

Guilty, but only as viewed in the overall context of this case and the further charges herein. Standing alone, this charged conduct would probably not warrant discipline.

CHARGE:

(b) Between the time of the conversation of February 24, 2000 and ap *718 proximately March 3, 2000, you again spoke with Det. Yaratch about his case, seeking to influence his investigation.

PANEL FINDING:

This charge was voluntarily withdrawn by the prosecution and thus the Panel makes no finding as to this allegation.

CHARGE:

(c) On or about March 3, 2000, you entered the hearing room of the Honorable Ralph C. Stoddard, presiding judge in the Adair case, and spoke to Judge Stoddard, about the case in the presence of others in a loud, angry, and temperamental manner, and shook your finger at Judge Stoddard. Among other things, you criticized the time it took for the parties in the Adair case to obtain an emergency hearing in Judge Stoddard’s Division, criticized Judge Stoddard’s leaving the daughter of the parties in the custody of a third party, stated it would be of concern to you if the respondent father might obtain custody of the child and insisted or demanded that Judge Stoddard hold an early hearing in the matter. In an attempt to influence Judge Stoddard’s decision in the case, you described the petitioner and her daughter as “the two people in the world dearest to me,” and stated that the petitioner was a good mother who was protective of her child. The ex parte contact contributed to Judge Stoddard’s recu-sal in the case.

PANEL FINDING:

Judge Holloway has, from the beginning, admitted this was improper conduct and she has apologized to Judge Stoddard. Despite the admission of guilt to the charge, substantial evidence was presented by the prosecution and responded to by the defense concerning the details of the contact with Judge Stoddard. This evidence was in sharp conflict. The Panel finds guilt on the charge and some of the details will be further addressed herein.

CHARGE:

2. On or about March 3, 2000, while in the Chambers of Judge Stoddard you falsely suggested and/or implied that Ronald Russo, attorney of the respondent in the Adair case had an improper hold on Judge Stoddard.
(a) In addition you demeaned the judicial office by making a crude remark to Judge Stoddard by implying that the respondent in the Adair case “must have pictures (with Judge Stod-dard) and a dog, and that’s why somebody can get something out of you and nobody else can.”

PANEL FINDING:

Guilty as charged. Judge Holloway admitted guilt as to this charge.

CHARGE:

3. On or about July 19, 2000, in Tampa, Florida, you were deposed in the Adair case by the respondent [Mark Johnson] acting pro se. Upon being duly sworn you testified as follows:
Q. Have you or anyone in your office . ever contacted law enforcement about this case.
A. Yes.
Q. Who and when, if you can recall?
A. I think just to determine who was going to investigate the most recent allegation, just to find out the name ' of the detective attached to the file.
Q. Did you ever speak to the detective?
A. I’ve spoken to the detective a lot, but not necessarily about this case. I don’t recall whether I spoke to him directly or not. I don’t believe that I did.
*719 This testimony was false or misleading because you had in fact contacted Detective Yaratch as set forth in paragraph 1(a) above.

PANEL FINDING:

Guilty as charged.

CHARGE:

4. On or about July 19, 2000, in Tampa, Florida, you were deposed in the Adair case by the respondent [Mr. Johnson] acting pro se. Upon being duly sworn you testified as follows:
Q. When did you learn that [P.A.] [the daughter of the petitioner and respondent] had been sheltered?
A. On a Saturday [February 26, 2000] morning. I don’t really recall the date or the time. I was at the baseball field, I think, or softball field.
Q. Did Cindy Tigert call you?
A. Yes.
Q. What was your reaction?
A. I was shocked.
Q. Did you do anything in response to that development in the case?
A. I don’t recall being able to do anything at that point.
Q. Did you contact [Judge] Ralph Stoddard?
A. No.
Q. Did you telephone him, contact him in anyway?
A. No.
Q. Did you go see him?
A. No.
The testimony was false or misleading in that you in fact did contact and speak with Judge Stoddard [on March 3, 2000] concerning the Adair case as set forth in paragraph 1(c), above.

PANEL FINDING:

Guilty as charged.

CHARGE:

5. On or immediately before August 8, 2000, you executed an errata sheet to your deposition described in paragraphs 3 and 4, stating:
(Errata Sheet)
Page 5, Line 9 — “the word ‘close’ should be “closest.”
Page 34, Line 19 — [the testimony quoted in paragraph 2[sic] above]— This deposition was taken after I had spent three hours at the funeral of Harry Lee Coe. Upon further reflection, I do recall a brief telephone conversation with Detective Yaratch. During this conversation, I informed Detective Yaratch that I did not want to discuss the facts of this investigation but hoped that the investigation would be handled in a timely fashion. Page 38, Line 22 through Page 39, Line 15 — [the testimony quoted in paragraph 3[sic] above] — My responses to these questions relate to the Saturday of the emergency shelter hearing referenced on Page 38, Line 24.
Despite these purported corrections, your testimony relating to your conversation with Detective Yaratch remained false and misleading because your testimony as corrected was not a truthful or complete account of your conversation with Detective Yaratch.
The corrections further are misleading with regard to your contact with Judge Stoddard because they do not respond fully and accurately to the question propounded to you, namely, (a) “Did you do anything in response to that development in the case?”; (b) “Did you contact Judge Stoddard?”; (c) “Did you telephone him, contact him in any way?” and (d) “Did you go see him?” These questions were not restricted to any specific date and require you to disclose the *720 [March 3, 2000] contact with Judge Stoddard described in paragraph 1(c) above, and you failed to do so.

PANEL FINDING:

Guilty as charged to the extent that the errata sheet was misleading, vague, incomplete, inaccurate, and intended to keep secret inappropriate contact with Judge Stoddard.

CHARGE:

6. On or about July 10, 1999, in Tampa, Florida, you lent the prestige of your judicial office to advance the private interest of a personal friend Jeanne T. Tate, Esquire. In furtherance of your friend’s interests you drafted or participated in the drafting and subsequently signed a Temporary Injunction Order prohibiting “The City of Tampa, Sonny’s Tree Service and any and all agents thereof ...” from “cutting down or in any way damaging the trees” in front of Ms. Tate’s law firm located on the west side of Hyde Park Boulevard, between Platt Street and Deleon Street in Hills-borough County. Said Order was executed by you without notice to The City of Tampa and/or Sonny’s Tree Service and served upon a representative of Sonny’s Tree Service by a City of Tampa uniform police officer at your direction. (See Temporary Injunction Order attached as Exhibit “A”).

PANEL FINDING:

This charge was withdrawn by the Prosecution. The withdrawal occurred during the respondent’s case after the Prosecution had presented all of its evidence on the charge and rested its case. Judge Holloway then presented her first witness, Jeanne T. Tate, who was the alleged friend mentioned in Charge 6. After this testimony by attorney Tate, Charge 6 was withdrawn by the prosecution. Thus the Panel makes no findings.

CHARGE:

7. On or about July 29, 1999, in Tampa, Florida you lent the prestige of your judicial office to advance the private interest of your brother James T. Holloway, Esquire. In furtherance of your brother’s interests you entered the front office of the Honorable Judge Katherine G. Essrig, the presiding Judge in your brother’s uncontested divorce and in the presence of others asked Judge Essrig to handle your brother’s case out of turn as he had an airplane to catch.

PANEL FINDING:

Guilty as charged.
Inquiry Concerning Judge Cynthia A. Holloway, Findings, Conclusions and Recommendations by the Hearing Panel of the Judicial Qualifications Commission, at 4-10 (Fla. Judicial Qualifications Commission report filed Jan. 18, 2002) (Hearing Panel Report).
As charged, the acts constitute alleged violations of Canons 1,[2] 2,[3] 3,[4] and 5 [5] of the Code of Judicial Conduct. The Hearing Panel’s comprehensive general and specific findings of fact concerning these multiple charges were as follows:

Findings of Fact

The following provides an overview of the case and the sequence of events leading to these proceedings. More specific findings as to certain individual *721 charges and the legal and ethical issues involved follow.
[[Image here]]

The Charges and Primary Issues

Charge 7 concerning Judge Holloway’s appearance before Judge Katherine G. Essrig was the last charge in the order of the pleadings but the earliest in point of time. It was uncontested that Judge Holloway had a one or two sentence exchange with Judge Essrig asking her to take her brother’s case (an uncontested divorce) out of order because he had a plane to catch. Judge Essrig felt the request was innocuous and would have been a common occurrence had it been made by a lawyer or a party. However, the request made her feel uncomfortable because anyone overhearing it might have thought she was giving preference to a judge’s relative. Judge Essrig felt the incident was “not a big deal” and Judge Holloway agreed, stating it was just a matter of common courtesy. Judge Holloway admitted she made the request and the only contested issue was whether there were other people in the area who might have overheard the request. The Panel concludes that others were present.
We initially provide this detail on the Judge Essrig matter only to fully distinguish it from the Adair v. Johnson matter. There was no connection between the two cases nor between Judge Essrig and Judge Stoddard who was involved in the Adair v. Johnson matter.
There was no question or dispute that Judge Holloway contacted Judge Stod-dard directly and committed a serious breach of ethics in doing so both in the manner and content of that contact. This violation was fully admitted by Judge Holloway and she apologized to Judge Stoddard.
The main issue in actual dispute concerning the Adair v. Johnson matter was whether Judge Holloway was untruthful in her deposition and errata sheet testimony concerning her contacts with Judge Stoddard and Detective Yar-atch. Also in question was whether her contact with the detective, as admitted in her errata sheet, rose to the level of an ethical violation as an attempt to influence the detective and his investigation.
The record reveals that Judge Holloway had indeed contacted Detective Yaratch and that she had a face-to-face emotional confrontation over the scheduling of the Adair v. Johnson case with Judge Stoddard. The overriding issue before this Panel was whether, in her deposition, Judge Holloway intentionally misrepresented the facts surrounding her contacts with Detective Yaratch and Judge Stoddard, and whether she then intentionally misrepresented those same facts in an errata sheet to that deposition. In the errata sheet she represented that: (1) she belatedly recalled her telephone call to the Detective; and (2) that when she denied contact with Judge Stoddard in her deposition, she was referring only to contact with him on the day Judge Stoddard ordered the child into shelter care which was a Saturday.
The chronology of Adair v. Johnson and Judge Holloway’s involvement in it, as found by the Panel, is as follows. It is undisputed that these events occurred. However, there is no agreement as to the details of the events.
The Adair case was filed September 16, 1997. The matter concerned custody of a child named [P.A.]. Robin Adair is the mother of the child and Mark Johnson is the father. The Adair/Johnson relationship had begun in California. After the birth of the child, Robin moved to the Tampa area where her sister, Cindy Tigert, and Cindy’s husband Bruce Tigert and their children *722 resided. Judge Holloway is married to attorney Todd Alley. The Tigert family and the Holloway/Alley family were extremely close friends. They lived near each other on Davis Island and both couples had young children roughly the same age. The children and the parents spent holidays together, traveled together, and were close to being a family unit. Cindy Tigert and Judge Holloway considered each other best friends. Robin Adair and her daughter [P.A.] spent significant time with the Tigert family and became friendly with Judge Holloway. Robin Adair lived in a small house on the Tigert property for a portion of the time.
Mark Johnson was represented by a series of attorneys but eventually took over his own representation. Mr. Johnson became adept at filing pleadings, taking depositions and acting as his own lawyer. Johnson took Judge Holloway’s deposition and there was clear animosity between them. Judge Holloway’s testimony at her deposition and in a later errata sheet became the central most important contested matter in the case. Mr. Johnson’s testimony before the Commission showed that he was knowledgeable concerning family law proceedings in Florida courts. He was also well aware of the JQC and its functions.
The Adair v. Johnson case was extremely acrimonious. On November 18, 1998, over a year after the case had been filed, Judge Holloway testified as a fact witness under subpoena before Judge Stoddard. Her testimony concerned possible inappropriate conduct of a sexual nature concerning the actions of the child [P.A.]. Mr. Johnson was present during this hearing and was inflamed by Judge Holloway’s testimony.
On June 15, 1999, Cindy Tigert, Judge Holloway and other friends were having dinner at a restaurant/bar in Tampa named Jackson’s. By chance, Mr. Johnson was also a restaurant patron and struck up a conversation with Judge Holloway. The details of the conversation are in dispute but it appears Mr. Johnson expressed his resentment to Judge Holloway concerning her testimony of November 18, 1998. At the hearing before this Panel, there was substantial hearsay evidence that Mr. Johnson decided to go after Judge Holloway before the Judicial Qualifications Commission. Mr. Johnson denied it, but was repeatedly quoted by others as having said that he would “get her job” referring to Judge Holloway. On July 15, 1999, Judge Holloway again testified as a subpoenaed witness before the circuit court. At this point her testimony concerned the Jackson’s restaurant incident.
A teacher at the school attended by [P.A.] made a report of possible sexual abuse implicating the child’s father, Mr. Johnson. Judge Holloway learned of this report and on February 24, 2000, placed a telephone call to the officer assigned to the case, Detective Yaratch. Again, what was actually said during this telephone conversation is disputed in most of the details. However, Judge Holloway’s version is that she called the detective to make sure the case did not “fall between the cracks” and told Detective Yaratch that although she knew none of the facts, she hoped he would proceed rapidly with an interview of the child at the facility known as the Child Abuse Center (CAC). Detective Yar-atch testified he thought it inappropriate for Judge Holloway to have called him but the Detective agreed that she did not ask him to do anything inappropriate or anything more than he would have done anyway. Detective Yaratch stated he was not influenced by the call and that an interview of the child did *723 occur at the CAC at the suggestion of Judge Stoddard.
Two days after the phone call to Detective Yaratch, a hearing occurred on Saturday, February 26, 2000, before Judge Stoddard. As a result of this hearing and to both parties’ surprise, Judge Stoddard ordered that the child be placed in shelter care with a teacher from her school. The mother Robin Adair was shocked as she assumed the child would be placed with her. This ruling took the child temporarily away from both parents. Both Robin Adair and her sister Cindy Tigert, who attended the hearing were outraged by the ruling. The two women immediately contacted Judge Holloway at a ball-field attending a softball game with her children. Judge Holloway was also shocked and tried to calm the two sisters who were near hysteria. On Monday, February 28, 2000, she learned a hearing on the shelter status of the child was not scheduled until Monday, March 8, 2000 — 8 days later. This concerned her greatly.
On Wednesday, March 3, 2000, Judge Holloway visited Judge Stoddard in his chambers and questioned him strongly as to why a hearing could not be scheduled sooner. She alleged that the attorney representing Mark Johnson had some sort of hold on the judge and made a crude comment regarding someone having obscene pictures of Judge Stod-dard with a dog. Judge Holloway admitted her conduct was an ethical breach and was outrageous. She agreed she was overly emotional and had made a terrible mistake. She apologized to Judge Stoddard and he accepted the apology, believing it to be genuine.
On March 6, 2000, Judge Stoddard recused himself from the Adair v. Johnson case, in part due to the contact by Judge Holloway. Other problems in the case concerning other individuals were already before Judge Stoddard and might have resulted in his recusal in any event. Judge Vivian Maye was assigned to the case and held a lengthy but inconclusive hearing on March 9, 2000, regarding the continued shelter status of the child. Another hearing was held by Judge Maye on March 20, 2000.
Judge Holloway was aware that Mr. Johnson had reported her to the JQC and that the JQC was actively investigating her conduct. Judge Holloway believed Johnson was furnishing information to the JQC’s investigator and that Mr. Johnson was attempting to “set her up.”
On July 19, 2000, Mr. Johnson, acting pro se, took Judge' Holloway’s deposition. Judge Holloway was represented by counsel, her husband Todd Alley, and the deposition indicates that questions regarding her contacts with Detective Yaratch and Judge Stoddard were asked and answered as quoted in charges 3 and 4 herein. An errata sheet to the deposition signed by Judge Holloway was filed on August 8, 2000, some 19 days after the deposition was transcribed. The errata sheet is contained in Charge 5. The final hearing in the Adair v. Johnson case occurred in February of 2001.
Charge 1(a) — Contact with Detective Yaratch
Based upon the testimony of both Detective Yaratch and Judge Holloway’s admissions, the Panel concludes that Judge Holloway did call the Detective and did suggest to him that he promptly proceed to interview the child at the Child Abuse Center. Detective Yaratch testified that he thought the call was inappropriate but that Judge Holloway did not attempt to influence him to do anything improper.
The Panel concludes that this charged conduct would not warrant discipline un *724 der the Code of Conduct governing judges. We recognize the somewhat similar nature as to the conduct of Judge Brown in the case of In re McMillan, 26 Fla. L. Weekly S522[, 797 So.2d 560] (Fla.2001). We also recognize the somewhat similar conduct of Judge Frank in the case of In re Frank, 753 So.2d 1228, 1240 (Fla.2000). In both of these cases, judges contacted either the police authorities or the Florida Bar and their conduct was held not inappropriate nor was it found to be unethical. A judge is at liberty to contact appropriate authorities concerning matters within the jurisdiction and purview of those authorities, here Judge Holloway did little more.
However, in the overall context of this case and in view of the other closely related charges, the Panel concludes that when Judge Holloway telephoned Detective Yaratch on February 24, 2000, she was in fact attempting to influence Detective Yaratch to act in a manner which would be favorable to her friend Robin Adair’s side of the case. These findings are based upon the testimony of Detective Yaratch and indeed the admissions of Judge Holloway herself who testified that she was extremely concerned that the child be protected and that the case be decided in favor of her friend, Robin Adair, and her closest friend, Cindy Tigert. We caution that this single phone call to the detective would not warrant discipline if it were not a part of the entire unfortunate series of events.
Charge 1(a) and 2(a) — Contact with Judge Stoddard
Both of these charges concern the single incident which lasted no more than minutes and occurred on March 3, 2000, in the hearing room of Judge Stoddard. From the beginning, Judge Holloway has admitted that this contact was absolutely improper. Her explanation is that she was upset and emotionally involved in the case which concerned the sister of her best friend, and a child she had grown close to. Although such motivation is understandable, her actions were entirely improper and certainly cannot be tolerated by a sitting circuit judge. We recognize that her admission of guilt and an apology for the conduct should be taken into consideration. As stated by [the] Court in In re Davey, 645 So.2d 398, 405 (Fla.1994), “When a judge admits wrongdoing and expresses remorse before the Commission, this candor reflects positively on his or her fitness to hold office and can mitigate to some extent a finding of misconduct.” We also note that Judge Stoddard testified that he was shocked, dismayed and hurt, but that in his opinion, Judge Holloway was a good judge, exercising “deference and respect” and that he “had the highest opinion of her abilities as a judge.”
Again the details of this charge are in striking dispute. However, Judge Holloway has admitted guilt as to these charges and we will not burden this Court with the further allegations and details as to precisely and exactly what was said by whom.
We do find, however, that the disqualification of Judge Stoddard was not due solely to the Holloway contact. We further find that Judge Holloway was not attempting to affect the shelter status of the child by contacting Judge Stoddard, and that this contact did not actually result in a prolonging of the shelter status. The new Judge, Judge Vivian Maye, held a prompt hearing on the continued shelter status of the child.
Charges 3, 4 and 5 — The Deposition and the Errata Sheet
These three charges concern the deposition of Judge Holloway as taken by *725 Mr. Johnson on July 19, 2000 and the errata sheet of August 8, 2000 which attempted to correct her previous testimony regarding contacts with Detective Yaratch and contacts with Judge Stod-dard. The prosecution’s argument is that Judge Holloway intentionally lied in her deposition and then intentionally lied in her errata sheet.
The Panel rejects the assertion that Judge Holloway intentionally lied in her deposition and then intentionally lied in her errata sheet. However, the Panel does find an ethical violation because both the deposition testimony and the errata sheet were at best misleading. The charges are in terms of “false or misleading” testimony.
It was simply unacceptable that Judge Holloway would testify that she had absolutely no contact with Judge Stoddard when everyone present in the room at her deposition knew she had in fact directly contacted Judge Stoddard on March 3, 2000, and that shortly thereafter he disqualified himself in the case. We find that the questions asked on deposition fairly called for a response admitting the contact with the judge and we do not accept Judge Holloway’s explanation that she intended and planned to answer absolutely no deposition questions regarding her contact with Judge Stoddard because she knew this was the subject of the JQC investigation prompted by Mr. Johnson’s complaints. Even when the errata sheet was filed, Judge Holloway did not admit to the contact with Judge Stoddard, but equivocated as to the meaning of her answers. The errata sheet as to Detective Yaratch was misleading in that it was incomplete.
Therefore the Panel finds that the testimony and errata sheet were misleading and thus finds Judge Holloway guilty as to these charges which alleged the testimony was “false or misleading.”
Charge 7 — Asking a Favor for Her Brother
The Panel finds that Judge Holloway asked Judge Essrig for a scheduling favor as to her brother. As indicated by Judge Essrig, this would have been a completely normal request had it been made by a lawyer, a party or indeed a witness. Unfortunately the request was made by a judge and stated in a fashion so that other persons in the area of Judge Essrig’s hearing room could well have overheard it. Judge Essrig herself testified that statements might well have been overheard by others and Judge Holloway’s own testimony did not dispute this fact. Indeed, this was the only thing about the request which concerned Judge Essrig. The Panel accepts the testimony of Judge Essrig and finds a violation as to this Charge.
Hearing Panel Report at 10-24 (record citations omitted).
In light of the foregoing, the Hearing Panel recommended that Judge Holloway be found guilty of charges 1(a), 1(c), 2(a), 3, 4, 5, and 7. As sanctions, the Hearing Panel recommends that this Court reprimand Judge Holloway, suspend her without pay for thirty days, and require that she pay the costs associated with these proceedings.
In her brief, Judge Holloway raises five issues.[6]
*726 II. ANALYSIS
We have described the scope of our review of JQC findings of facts as follows:
Before reporting findings of fact to this Court, the JQC must conclude that they are established by clear and convincing evidence. In re McAllister, 646 So.2d 173, 177 (Fla.1994). This Court must then review the findings and determine whether they meet this quantum of proof, a standard which requires more proof than a “preponderance of the evidence” but the less than “beyond and to the exclusion of a reasonable doubt.” In re Davey, 645 So.2d 398, 404 (Fla.1994). If the findings meet this intermediate standard, then they are of persuasive force and are given great weight by this Court. See In re LaMotte, 341 So.2d 513, 516 (Fla.1977). This is so because the JQC is in a position to evaluate the testimony and evidence first-hand. See In re Crowell, 379 So.2d 107 (Fla.1979). However, the ultimate power and responsibility in making a determination rests with this Court.
In re McMillan, 797 So.2d 560, 565-66 (Fla.2001) (quoting In re Graziano, 696 So.2d 744, 753 (Fla.1997)). Clear and convincing evidence has been described as follows:
This intermediate level of proof entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.
Davey, 645 So.2d at 404. In her issues (1), (2), (3), and (4), Judge Holloway raises various challenges to the Hearing Panel’s findings. After our extensive review of this record, with the exception of charge 1(a), we find there is competent evidence to support the Hearing Panel’s findings based upon the required standard. We conclude that there is not sufficient evidence in the record to sustain the guilt recommendation as to charge 1(a). We address each issue raised by Judge Holloway in the order in which she raised them.
A. Charges 3, I, and 5

Deposition Testimony and Errata Sheets

Judge Holloway contends that the guilt findings for charges 3, 4, and 5 should be rejected. What is at issue in these charges are the specific answers and corrections given by Judge Holloway in the custody deposition and corresponding errata sheet. Judge Holloway was asked whether she had contacted Judge Stod-dard. The record supports the Hearing Panel’s conclusion that the answer given in the deposition was incorrect, and her subsequent answer given on the errata sheet was misleading.
With regard to the Detective Yaratch deposition question, we likewise determine that there is competent, substantial evidence to support that Judge Holloway’s correction contained in the errata sheet to this incorrect answer was materially incomplete.
Having found sufficient evidence existing in the record to sustain the factual findings, we turn to Judge Holloway’s argument concerning whether the Hearing Panel could still find a violation in view of that panel’s factual determination that she did not intentionally lie. We reject Judge Holloway’s argument that according to our decision in Davey, the panel could not find an ethical violation after it concluded she did not intentionally lie. To the contrary, a judge making a materially misleading *727 statement in a judicial proceeding, including statements made in discovery, commits an ethical violation. See Davey, 645 So.2d at 407. Here, it is beyond question that Judge Holloway had knowledge of these events which was material. Judge Holloway’s deceit through misdirection and incompleteness, as demonstrated by the Hearing Panel, in answering the deposition questions and in executing the errata sheet were ethical violations for charges 3, 4, and 5.

B.Charge 7

Contact with Judge Essrig

Judge Holloway, in respect to this charge, contends that the Hearing Panel’s findings are erroneous because Judge Ess-rig testified that she would have given favorable consideration to scheduling requests from anyone. Thus, according to Judge Holloway, the location where Judge Holloway asked Judge Essrig for the scheduling favor does not matter. Moreover, Judge Holloway contends that the Hearing Panel overlooked the testimony of Judge Essrig’s bailiff and judicial assistant as well as several attorneys who testified that they did not witness Judge Holloway ask Judge Essrig for the scheduling favor in the reception area of Judge Essrig’s chambers.
We find no error with the Hearing Panel’s conclusion of guilt as to this charge. Clear and convincing evidence exists in the record supporting the Hearing Panel’s findings. While Judge Holloway produced witnesses who stated that they did not hear the request, Judge Holloway has admitted to making it. The record reveals that Judge Essrig was quite certain that the request was made outside Judge Ess-rig’s hearing room in front of others and her memory on this point was clear, even though this event occurred in July 1999.
Judge Holloway’s contention that she could not have committed an ethical violation because Judge Essrig would freely grant such scheduling favors ignores that this was an ex parte communication on behalf of a party in a pending case. Judge Holloway’s conduct in this regard was in violation of the Code of Judicial Conduct.
C. Charge 1(c)

Purported Conflicting Findings Concerning the Judge Stoddard Contact

Judge Holloway admitted this charge. The Hearing Panel in accepting her admission made factual findings. Judge Holloway contends that this Court should not consider certain characterizations in the Hearing Panel’s factual findings relating to this charge. For example, the Hearing Panel noted that even though Judge Holloway admitted guilt, the testimony presented relating to this incident was in “striking dispute.” Judge Holloway admits that she went into Judge Stoddard’s hearing room and angrily engaged in an ex parte “discussion.” We find no error in the Hearing Panel’s findings as to this charge.
D. Charge 1(a)

Contact with Detective Yaratch

As her last guilt phase issue, Judge Holloway contends that the Hearing Panel’s equivocal finding of guilt requires a conclusion that the charge is legally insufficient. She points out that she was not charged with a pattern of misconduct; thus, the Hearing Panel’s finding that the “single phone call to the detective would not warrant discipline if it were not a part of the entire unfortunate series of events” cannot stand. Furthermore, Judge Holloway notes that the Hearing Panel found that her conduct was similar to the conduct of Judge Frank in In re Frank and Judge Brown in In re McMillan, in which this Court found no ethical violation by those judges in contacting authorities. Judge Holloway also argues that there is no evidence in the record which supports *728 the finding that she attempted to influence the investigation in favor of Robin Adair. We agree that there is insufficient evidence in this record to support a guilty finding to charge 1(a).
This Court in In re Frank, 753 So.2d 1228, 1240-41 (Fla.2000), addressed the situation of whether a judge impermissibly uses the judicial position by contacting those in a position of authority. In In re Frank, the respondent judge, then chief judge of the Second District Court of Appeal, contacted Bar grievance attorneys and expressed frustration with their handling of a grievance matter. See id. at 1240. All witnesses testified that the judge did not ask or demand special treatment on account of his position. See id. This Court rejected the Hearing Panel’s recommendation of guilt and explained:
Knowledge that one is a judicial officer or respectful conduct in response to such knowledge does not automatically translate into a determination that a judicial position has been abused. Judge Frank did not forfeit the right to make proper inquiry concerning the pending matters simply because he held judicial office. A judicial officer should not be sanctioned simply because those with whom he or she has interaction are aware of the official position. The use of a judicial position or power of the position in an unbecoming manner requires more than simply someone being aware of one’s position. The gravamen of the charge under the circumstances requires that there be some affirmative expectation or utilization of position to accomplish that which otherwise would not have occurred. The testimony here demonstrates that those interacting with Judge Frank were aware of his position, but their actions, while respectful of his position, were none other than those normally expected under any other circumstance.
Id. at 1240-41.
In the instant case, Judge Holloway testified that she was genuinely concerned about the welfare of the child as there had been a report of possible sexual abuse by a disinterested party, P.A.’s teacher. She further testified that she was concerned that the case might be “falling through the cracks,” in that there had been no visible police action to investigate the report.
There is no dispute in the testimony of Judge Holloway and Detective Yaratch that in the three to four minute phone conversation, Judge Holloway disclosed that she had an altercation with Mark Johnson, had no information about the sexual abuse allegation, and requested a Child Advocacy Center interview be conducted with P.A.[7] Here, there is nothing in the record suggesting that Judge Holloway attempted to influence the criminal investigation in a manner favorable for Robin Adair. Nothing in the record indicates that Judge Holloway asked or demanded special treatment on account of her position. Indeed, Detective Yaratch testified that Judge Holloway requested nothing improper, but he felt that the phone call itself was improper. However, as we indicated in Frank, a phone call by a judge is not, in itself, sufficient to conclude that the judge is abusing her office. 753 So.2d at 1240-41. As we conclude that there is insufficient evidence in the record to support this charge, we reject the Hearing Panel’s guilt recommendation as to charge 1(a).
*729 E. Recommended Sanctions
Having addressed the Hearing Panel’s findings and guilt recommendations, we next consider the appropriate sanctions. The Hearing Panel recommends that we suspend Judge Holloway for thirty days without pay, reprimand her, and impose the costs of the proceedings upon her. Judge Holloway contends that the proposed sanctions, even considering all the charges together, are too severe in light of Judge Holloway’s personal acceptance of responsibility in the Judge Stoddard issue and her strong character references. She also contends that she should not have to pay for costs associated with charges which were dropped. We agree that Judge Holloway should not pay costs associated with those charges which were dropped, i.e., charges 1(b) and 6, but we disagree that a reprimand alone is a sufficient sanction in this instance.
At the outset, we underscore our most serious concern with Judge Holloway’s confronting Judge Stoddard — particularly in an ex parte manner. Judge Holloway had twice been a witness in the Adair v. Johnson matter over which Judge Stod-dard presided and most certainly knew her actions were designed to assist Robin Adair’s legal position. We conclude that this is serious misconduct.
Judge Holloway argues that our case law favors a reprimand and there exists no case law suggesting a thirty-day suspension is appropriate. However, this contention ignores that it was not until the 1998 amendment to article V, Florida Constitution, that there was the constitutional authority to suspend judges. See art. V, § 12(c)(1). In In re Wilson, 750 So.2d 631 (Fla.1999), we suspended the disciplined judge without pay for ten days based on several ethical breaches. In our view, the multiple instances of misconduct in the present case, in addition to the extremely serious nature of these charges, requires a harsher sanction than that imposed in Wilson.
Counsel for the JQC in this review suggests this is a case in which removal is appropriate. We expressly note, however, that this is not the recommendation of the Hearing Panel.
In mitigation, Judge Holloway has accepted responsibility for her actions relating to the Judge Stoddard incident. See In re Schwartz, 755 So.2d 110, 113 (Fla.2000). Based on this acceptance of responsibility for her actions as to that matter and on the testimony of numerous character witnesses that, other than in the instances which are the subject of these charges, she has demonstrated that she is capable of performing ably in judicial service, we accept the recommendation of the Hearing Panel that removal from office is not required in this case.
Judge Holloway violated Canons 1, 2, 3, and 5 of the Code of Judicial Conduct relating to her improper contact with and statements to Judges Stoddard and Essrig as well as relating to her under oath answers in the deposition and errata sheet. We accept and approve the recommendation of discipline by the Hearing Panel.[8]
III. CONCLUSION
Accordingly, we order that Judge Cynthia A. Holloway be reprimanded and command that she travel at her expense to this Court to receive such reprimand on December 13, 2002, at 8:30 a.m. See In re Frank, 753 So.2d at 1242. We suspend Judge Holloway without pay for thirty continuous days, which suspension shall begin December 10, 2002. Judge Hollo *730 way shall pay the costs of these proceedings. See McMillan, 797 So.2d at 573.
Any motion for rehearing shall be filed on or before November 18, 2002.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE and QUINCE, JJ., and HARDING, Senior Justice, concur.
LEWIS, J., concurs in result only.

. Judge Holloway has resigned as a judge of the Thirteenth Judicial Circuit, effective January 10, 2003.

. Canon 1 is titled "A Judge Shall Uphold the Integrity and Independence of the Judiciaiy.”

. Canon 2 is titled "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge’s Activities.”

. Canon 3 is titled "A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.”

. Canon 5 is titled "A Judge Shall Regulate Extrajudicial Activities to Minimize the Risk of Conflict with Judicial Duties.”

. The five issues raised by Judge Holloway are whether: (1) the guilt findings regarding the deposition testimony and errata sheet charges should he rejected; (2) the guilt finding regarding the contact with Judge Essrig should be rejected; (3) this Court should disregard and not consider the Hearing Panel's factual findings relating to the Judge Stod-dard contact that conflict with Judge Hollo *726 way’s admission of guilt; (4) the guilt finding regarding the contact with Detective Yaratch should be rejected; and (5) this Court should modify the recommended sanctions.

. Law enforcement personnel have the discretion as to whether to schedule a Child Advocacy Center interview.

. We conclude the recommendation is appropriate in this case even though we find insufficient evidence in the record to sustain the Hearing Panel’s guilt finding with regard to charge 1(a).