# Supreme Court of Florida

_____

No. SC16-2178
_____

**INQUIRY CONCERNING A JUDGE NO. 16-496
RE: PHILIP JAMES YACUCCI, JR.**

[November 2, 2017]

PER CURIAM.

This matter is before the Court to review the determination of the Florida Judicial Qualifications Commission (JQC) that Judge Philip James Yacucci, Jr., violated Canons 1, 2A, 3B(8), 3B(9), and 3(E)(1) of the Florida Code of Judicial Conduct. The JQC recommends: (1) a public reprimand; (2) a thirty-day suspension without pay; (3) completion of a judicial ethics course within one year; and (4) payment of the costs of the JQC proceedings. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons that follow, we approve the JQC's findings and recommended discipline.

## BACKGROUND

Judge Yacucci has served as a county court judge in the Nineteenth Judicial Circuit since 2002. On December 8, 2016, the JQC Investigative Panel filed a

Notice of Formal Charges against Judge Yacucci for conduct in violation of Canons 1 (judge shall uphold the integrity and independence of the judiciary), 2A (judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), 3B(8) (judge shall dispose of judicial matters promptly, efficiently and fairly), 3B(9) (judge shall refrain from commenting publicly or non-publicly in ways that could interfere with fair trials or hearings), and 3E(1) (judge shall disqualify himself or herself in proceedings where his or her impartiality might reasonably be questioned) of the Code of Judicial Conduct. In his answer, Judge Yacucci denied that his conduct was violative of the Code of Judicial Conduct. On May 1, 2017, the JQC Hearing Panel held an evidentiary hearing, and issued its "Findings of Fact, Conclusions of Law and Recommendations of the Hearing Panel, Florida Judicial Qualifications Commission" (Findings) on June 29, 2017. In re Judge Philip James Yacucci, Jr., No. 16-496 (Fla. Jud. Qual. Comm'n June 29, 2017).

**FINDINGS OF THE HEARING PANEL**

Judge Yacucci's violations occurred during the course of an adversarial and contentious professional relationship between Judge Yacucci and attorney Stephen Smith. Id. at 1. Judge Yacucci has served as a county court judge in St. Lucie County since 2002. Id. at 3. Smith, who joined his current employer "The Ticket Clinic" in 2009, handled all of the Ticket Clinic's cases in St. Lucie County. Id. at

4. Judge Yacucci held Smith in contempt in 2009 for accidentally showing up late to a hearing, and again in 2014 where he jailed Smith for five days for "hotly disputed" reasons. Id. During the 2014 contempt finding, Judge Yacucci announced in the courtroom that he had "lost confidence" in Smith, and subsequently filed a Florida Bar complaint which was later resolved with no imposition of discipline. Id. at 4-5.

Thereafter, in 2014, Smith ran against Judge Yacucci for a county court seat in a highly combative election. Id. at 5. Judge Yacucci sued Smith and an electioneering communication organization ("ECO") for defamation, invasion of privacy, and intentional infliction of emotional distress. Id. Judge Yacucci obtained a temporary injunction against the ECO, but the Fourth District Court of Appeal in Concerned Citizens for Judicial Fairness, Inc. v. Yacucci, 162 So. 3d 68, 72-73 (Fla. 4th DCA 2014), overturned it for lacking supporting evidence and for triggering First Amendment concerns. Id. at 5-6.

Before election day, a public altercation between Smith and Judge Yacucci occurred at a polling place. Id. at 6. Judge Yacucci asserted that Smith made a sexual innuendo about Judge Yacucci's wife, and that he responded with heated and profane words. Id. Smith asserted that the judge verbally attacked and physically assaulted him, and so he subsequently sued Judge Yacucci for assault, battery, and defamation. Id. During a televised interview in his courtroom

immediately following the incident, Judge Yacucci remarked that Smith "should not be a lawyer," "should not be in a courtroom," and that he is "truly a disgrace as a judicial candidate and really as a human being." Id.

In December 2014, Judge Yacucci won the election, but later appeared before the JQC to discuss his behavior during the election. Id. Judge Yacucci informed the Investigative Panel that he would recuse himself on Smith's cases, which he did for the following two-and-a-half years. Id. at 7. However, in September 2016, Judge Yacucci refused to recuse himself in State v. Harracksingh, 2015-CT-2111, resolving that he had recused himself on Smith's cases for long enough and that Smith "was simply a conduit of the Ticket Clinic," which Judge Yacucci surmised had funded the ECO in the election campaign against him and was attempting to forum shop by funding judicial campaigns. Id. at 7-8.

On October 5, 2016, Smith petitioned for a writ of prohibition disqualifying Judge Yacucci from presiding over the Harracksingh case. Id. at 8. Thereafter, Judge Yacucci on his own initiative filed a response to Smith's petition, detailing the history of disputes between Judge Yacucci and Smith. Id. Judge Yacucci later denied additional motions to disqualify filed by Smith, despite their legal sufficiency, because he wanted an appellate ruling and was "not going to recuse anymore" until he secured it. Id. at 9. Multiple parties subsequently joined the petition for writ of prohibition. Id.

Judge Yacucci later sought guidance from the JQC but did not recuse himself despite advice that recusal was a safer course. Id. Instead, he filed a second unsolicited pleading in response to Smith's petition for writ of prohibition, reiterating points about Smith's contempt conviction, Bar complaint, and funding of judicial campaigns by the Ticket Clinic, as well as accusing appellate counsel of intentionally misleading the court. Id. at 9-12. On November 16, 2016, the circuit court granted the writ of prohibition, disqualifying Judge Yacucci from hearing several cases. Id. at 12.

At the May 1, 2017, evidentiary hearing, the Hearing Panel heard testimony from Judge Yacucci who maintained that he did not act inappropriately during the polling place altercation and in responding to Smith's petition. Id. at 13. He further testified that his televised statements about Smith were truthful, and acknowledged he still held the same feelings about Smith. Id. at 13-14. Judge Yacucci defended his actions as necessary to counter the Ticket Clinic's schemes, and "at no point" considered recusal from the viewpoint of Smith's clients. Id. at 15-17.

Ultimately, the Hearing Panel found Judge Yacucci guilty of violating Canons 1, 2A, 3B(8), 3B(9), and 3E(1) of the Florida Code of Judicial Conduct. Id. at 19. The Hearing Panel recognized that "[i]t is hard to conceive a situation more likely to create a reasonable fear of partiality and bias on the part of a litigant

than the long-standing, personal and professional disputes between these parties." Id. at 20. Accordingly, the Hearing Panel recommended: (1) a public reprimand; (2) a thirty-day suspension without pay; (3) completion of a judicial ethics course within one year; and (4) payment of the costs of the JQC proceedings. Id. at 23-25.

After the JQC filed the Hearing Panel's Findings, this Court ordered Judge Yacucci to show cause why the recommended action should not be granted. In his response, Judge Yacucci conceded the findings and most recommendations, disputing only the recommendation of a thirty-day suspension.

**ANALYSIS**

"According to article V, section 12(c)(1) of the Florida Constitution, this Court has discretion to either accept, reject, or modify the [JQC's] findings and recommendation of discipline." In re Renke, 933 So. 2d 482, 493 (Fla. 2006). "This Court reviews the findings of the JQC to determine whether the alleged violations are supported by clear and convincing evidence . . . ." In re Woodard, 919 So. 2d 389, 390 (Fla. 2006). "In cases where a judge admits to wrongdoing and the JQC's findings are undisputed this Court will ordinarily conclude that the JQC's findings are supported by clear and convincing evidence." In re Diaz, 908 So. 2d 334, 337 (Fla. 2005). Judge Yacucci did not contest that his conduct violated Canons 1, 2A, 3B(8), 3B(9), and 3E(1) of the Florida Code of Judicial

- 6 -

Conduct, and the JQC's findings are undisputed. We therefore conclude that the JQC findings are supported by clear and convincing evidence.

Although this Court "gives the findings and recommendations of the JQC great weight, 'the ultimate power and responsibility in making a determination [to discipline a judge] rests with this Court.' " In re Kinsey, 842 So. 2d 77, 85 (Fla. 2003) (footnote omitted) (quoting In re Davey, 645 So. 2d 398, 404 (Fla. 1994)). This Court "reviews the recommended discipline to determine whether it should be approved." In re Flood, 150 So. 3d 1097, 1098 (Fla. 2014) (quoting In re Woodard, 919 So. 2d at 390). As previously explained, the JQC recommended: (1) a public reprimand; (2) a thirty-day suspension without pay; (3) completion of a judicial ethics course within one year; and (4) payment of the cost of the proceedings. Because Judge Yacucci does not contest any aspect of the recommendation other than the thirty-day suspension, we limit our discussion to the suspension.

Judge Yacucci argues that a thirty-day suspension without pay is excessive and inconsistent with this Court's precedent. To the contrary, because Judge Yacucci repeatedly violated his duty to be impartial and to disqualify himself from Smith's cases, and because this Court's precedent supports the imposition of this additional sanction, we conclude that suspension is an appropriate sanction.

Judge Yacucci's conduct warrants a sanction harsher than a mere public reprimand, as his longstanding combative relationship with Smith created legitimate fears of partiality and bias on the part of several litigants before his court. The acrimonious relationship between Judge Yacucci and Smith, marked by lawsuits, a public altercation and televised disparagement, the jailing of Smith for contempt, judicial campaign disputes, unsolicited attempts to influence a petition for writ of prohibition, and multiple refusals to disqualify himself, clearly displayed Judge Yacucci's disregard for proper judicial conduct. Further, the responses filed by Judge Yacucci disputed the charges against him and attempted to taint the court's view of Smith. The judge's pattern of behavior towards Smith and his refusal to disqualify himself on several cases despite the legal sufficiency of Smith's motions constitute clear and egregious violations of the Canons of the Code of Judicial Conduct.

In cases involving misconduct of a similarly serious nature, where judges have diminished the public's confidence in the integrity of the judiciary and in judicial impartiality, this Court has previously imposed sanctions such as suspension without pay in addition to a public reprimand. See In re Holloway, 832 So. 2d 716, 729 (Fla. 2002) (ordering thirty-day suspension without pay where a judge repeatedly confronted other judges and aided parties in an ex parte manner); In re Albritton, 940 So. 2d 1083, 1089 (Fla. 2006) (ordering thirty-day suspension

without pay where a judge violated five canons via a pattern of misconduct involving improper courtroom decorum and intemperate behavior); In re Shepard, 217 So. 3d 71, 183-84 (Fla.) petition for cert. filed, No. 17-493 (U.S. Sept. 29, 2017) (ordering ninety-day suspension without pay where a judge circulated a deceptive and misleading advertisement in her judicial campaign).

In In re Contini, 205 So. 3d 1281, 1284-85 (Fla. 2016), this Court affirmed a public reprimand, but not suspension, where the judge engaged in ex parte communications with counsel and berated counsel in open court. However, the judge in In re Contini admitted to the wrongdoing, accepted complete responsibility for his actions, and apologized with sincere remorse. Id. Here, unlike the judge in In re Contini, Judge Yacucci has not exhibited regret or remorse for his conduct. See In re Davey, 645 So. 2d at 405 ("Where a judge admits wrongdoing and expresses remorse before the Commission, this candor reflects positively on his or her present fitness to hold office and can mitigate to some extent a finding of misconduct."). Judge Yacucci did not apologize nor cooperate with the JQC, but instead attempted to justify his actions during the JQC hearings as well as in his briefs to this Court.

### CONCLUSION

Judge Philip James Yacucci, Jr., is hereby suspended without pay for thirty days from his duties as a county court judge of the Nineteenth Judicial Circuit. We

order Judge Yacucci to pay the costs of these proceedings, and we remand this case to the JQC for a determination of the amount of such costs. We order Judge Yacucci to attend a judicial ethics course to be completed within one year. We also command Judge Yacucci to appear before this Court for the administration of a public reprimand at a time to be set by the Clerk of this Court. The effective date of the suspension shall be within fifteen days from the date of this opinion at the direction of the Chief Judge of the Nineteenth Judicial Circuit. Once the effective date is determined, the Court Administrator for the Nineteenth Judicial Circuit shall submit a personnel action request (PAR) form to the Personnel Office of the Office of State Courts Administrators for processing. Absent an order from this Court, a motion for rehearing of this decision will not toll the effective date of the suspension.

It is so ordered.

LABARGA, C.J., and CANADY, POLSTON, and LAWSON, JJ., concur.
LEWIS, J., concurs in result.
PARIENTE, J., concurs in part and dissents in part with an opinion, in which QUINCE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring in part and dissenting in part.

I concur with the majority because I agree that Judge Yacucci violated the Code of Judicial Conduct throughout the course of an adversarial and contentious

- 10 -

professional relationship that escalated during a contested election between Judge Yacucci and attorney Stephen Smith. I dissent in part because I conclude that a longer suspension of at least ninety days is warranted in light of the totality of Judge Yacucci's conduct, which occurred over a period of years and was unbefitting of a judicial officer both in the courtroom and on the campaign trail. I recognize that Judge Yacucci, first elected as a county court judge in 2002, has in many respects had an unblemished legal and judicial career, but we cannot and do not condone Judge Yacucci's misconduct as found by the Judicial Qualifications Commission ("JQC") and approved by this Court.

Before the JQC and this Court, Judge Yacucci asserts that his conduct was motivated by "more important larger issues." He claims that his conduct was motivated by a concern to maintain the independence of the judiciary, which he asserts was under siege by the actions of attorney Smith, and his employer, the Ticket Clinic. Specifically, Judge Yacucci alleges that attorney Smith engaged in an unethical campaign with the sole goal of obtaining Judge Yacucci's blanket recusal from any of his cases following the campaign.

But the conduct of attorney Smith is not before this Court, and Judge Yacucci's actions in this case, as found by the JQC, show that Judge Yacucci failed to act in a "manner that promoted public confidence in the integrity and impartiality of the judiciary." See Code of Jud. Conduct, Canon 2(A). Stating in a

- 11 -

televised interview in his courtroom that Smith "should not be a lawyer," "should not be in a courtroom," and is "truly a disgrace as a judicial candidate and really as a human being" is the type of quintessential conduct that stands contrary to the core principles espoused in our Code of Judicial Conduct. That those comments followed a public altercation at a polling place where Smith claims that Judge Yacucci verbally and physically assaulted him only confirms that Judge Yacucci was conducting himself in a manner antithetical to the high standards of conduct expected of our judges.

As the JQC found, "Judge Yacucci attempted to justify his conduct by resort to the 'larger issues' of judicial independence and its ostensible subversion by the Ticket Clinic." In re Judge Philip James Yacucci [Jr.], No. 16-496 (Fla. Jud. Qual. Comm'n June 29, 2017), at 22. But as the JQC also observed, Canon 1 requires both judicial integrity and judicial independence. The latter "does not offer judges the power to do as they please." Id. (quoting In re Eriksson, 36 So. 3d 580, 588 (Fla. 2010)).

In this case, the majority makes clear that "Judge Yacucci repeatedly violated his duty to be impartial and to disqualify himself from Smith's cases," and the "acrimonious relationship between Judge Yacucci and Smith, marked by lawsuits, a public altercation and televised disparagement, the jailing of Smith for contempt, judicial campaign disputes, unsolicited attempts to influence a petition

- 12 -

for writ of prohibition, and multiple refusals to disqualify himself, clearly displayed Judge Yacucci's disregard for proper judicial conduct." Majority op. at 7-8. Moreover, "Judge Yacucci did not apologize nor cooperate with the JQC, but instead attempted to justify his actions during the JQC hearings as well as in his briefs to this Court." Majority op. at 9. Accordingly, the majority properly concluded and Judge Yacucci conceded that he violated the Code of Judicial Conduct.

As the JQC observed, a judge is "not a knight-errant, roaming at will in pursuit of his own ideal[s]." Yacucci, No. 16-496 (Fla. Jud. Qual. Comm'n June 29, 2017), at 22 (quoting Benjamin N. Cardozo, The Nature of the Judicial Process (1921)). Apparently Judge Yacucci also claimed to be motivated by the lack of an adequate response from The Florida Bar to his complaint about attorney Smith. Of course, as the JQC observed:

> The Florida Bar has jurisdiction to investigate and discipline lawyers for their conduct in court and during judicial campaigns. Judge Yacucci's dissatisfaction with the Florida Bar, and perceived disparity between judges and judicial candidates during a contentious election, did not justify personal efforts to punish Mr. Smith and his employer by other means, including improper comments about their character on television or in the appellate court.

Id.

Most assuredly, if an attorney undertook the type of cumulative actions as occurred here, this Court would have imposed a suspension longer than thirty days.

Just as we expect attorneys to treat judges with respect, judges have an obligation

to treat attorneys with respect. If attorneys act improperly, there are procedures

judges can properly follow to address a contempt of court. As the JQC observed:

> Judge Yacucci is an experienced lawyer and judge, who made what he perceived to be a valiant effort to rid St. Lucie County of attempts "to intimidate judges with veiled threats" of future judicial challenges. "His zealous pursuit of a pure society apparently clouded his ability to impartially adjudicate the matters before him. His motives are acceptable, but his methods are not." [In re] Graham, 620 So. 2d [1273,] 1275 [(Fla. 1993)].

Id. at 23.

Judge Yacucci's cumulative misconduct in this case diminished the public's

perception of the judiciary and, by engaging in this conduct, Judge Yacucci failed

to uphold the integrity and independence of the judicial office. If the JQC's

unrefuted findings of misconduct did not cause Judge Yacucci to reflect upon the

totality of his actions, I am skeptical that this Court requiring Judge Yacucci to

take a judicial ethics course will have its desired effect. See majority op. at 1. For

all of these reasons, I would conclude that the conduct in this case warrants, at

minimum, a ninety-day suspension.[1]

---

1. See, e.g., In re Shepard, 217 So. 3d 71, 74 (Fla. 2017) (holding that a ninety-day suspension without pay, public reprimand, and costs, was appropriate where judge made an intentionally deceptive campaign ad misrepresenting an endorsement from a local newspaper and failed to take responsibility for her conduct through either an apology or acknowledgement of wrongdoing); In re Decker, 212 So. 3d 291, 309 (Fla. 2017) (holding that discipline including a six-month suspension, public reprimand, and costs, was appropriate where misconduct

Accordingly, I concur with the majority with respect to its findings regarding Judge Yacucci's conduct but dissent as to the majority's imposition of only a thirty-day suspension without pay and would impose a suspension of at least ninety days.

QUINCE, J., concurs.

Original Proceeding – Judicial Qualifications Commission

Honorable Kerry I. Evander, Chair, Honorable Robert Morris, Past Chair, Michael Louis Schneider, Executive Director and General Counsel, and Alexander John Williams, Special Counsel and Assistant General Counsel, Judicial Qualifications Commission, Tallahassee, Florida; and Lauri Waldman Ross of Ross & Girten, Counsel to the Hearing Panel of the Florida Judicial Qualifications Commission, Miami, Florida,

     for Florida Judicial Qualifications Commission, Petitioner

Robert J. Watson of Robert J. Watson, P.A., Stuart, Florida,

     for Judge Philip Yacucci, Jr., Respondent

---

included campaign violations, conflict of interest in representation of clients, and lying to the court and opposing counsel).