# Supreme Court of Florida

_____

No. SC12-2495

_____

**INQUIRY CONCERNING A JUDGE, NO. 11-550
RE: JUDITH W. HAWKINS**

[October 30, 2014]

PER CURIAM.

In this case we review the determination of the Hearing Panel of the Florida Judicial Qualifications Commission (the Hearing Panel) that Judge Judith W. Hawkins has committed a series of violations of the Code of Judicial Conduct. We have jurisdiction. See art. V, § 12, Fla. Const. The Hearing Panel recommended serious sanctions short of removal, but our constitutional responsibility requires this Court to determine the appropriate sanction. See In re Sloop, 946 So. 2d 1046, 1049 (Fla. 2006). Article V, section 12(c)(1), of the Florida Constitution confers on this Court the authority to "accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission and . . . order that the justice or judge be subjected to appropriate discipline, or be removed from office." We undertake this responsibility with caution and restraint, keeping in

mind, however, the utmost importance of maintaining the integrity of the justice system.  See In re Henson, 913 So. 2d 579, 593 (Fla. 2005).  "Although this Court gives the findings and recommendations of the JQC great weight, the ultimate power and responsibility in making a determination to discipline a judge rests with this Court."  In re Turner, 76 So. 3d 898, 907 (Fla. 2011) (quoting In re Colodny, 51 So. 3d 430, 431 (Fla. 2010)).  Thus, in the final analysis, we must impose such sanction as this Court determines is appropriate and required under the specific circumstances of each case including, when necessary, removal from the bench.

We remain mindful that removal is the ultimate sanction in a judicial disciplinary proceeding, but we will impose that sanction when we conclude that the judge's conduct is fundamentally inconsistent with the responsibilities of judicial office.  See In re Shea, 759 So. 2d 631, 638 (Fla. 2000).  For the reasons we explain, based on the violations found by the Hearing Panel which were supported by clear and convincing evidence, we conclude that removal from the bench is the only appropriate sanction in this case.

## FACTS AND PROCEDURAL HISTORY

On December 5, 2012, an Investigative Panel of the Florida Judicial Qualifications Commission filed a notice of formal charges against the Honorable Judith W. Hawkins, a county judge in the Second Judicial Circuit, in and for Leon

County.  A Notice of Amended Formal Charges, adding additional charges arising from Judge Hawkins' conduct during the investigation, was filed on June 10, 2013.

The amended notice alleged violations of the Code of Judicial Conduct, Canons 1, 2A, 2B, 3A, 3B(2), 3B(4), 3B(7), 3B(8), 3C(1), 4D(1), and 5D(1), and violation of article V, section 13, of the Florida Constitution.  Article V, section 13, provides in pertinent part that all judges "shall devote full time to their judicial duties."  The charges comprised five categories: I. use of judicial office to promote a private business, Gaza Road Ministries, in which Judge Hawkins was a speaker and a writer, having written and published a book titled "Old Stories, New Insights" based on biblical stories; II. failure to respect and comply with the law; III. failure to act in a manner promoting public confidence in the judiciary; IV. failure to devote full attention to her judicial office; and V. lack of candor with the Judicial Qualifications Commission (the Commission).

It was alleged in count I(A) of the Notice of Amended Formal Charges that Judge Hawkins used court resources to operate a private business from which she derived substantial income, in that she operated her Gaza Road Ministries business in large part from her judicial chambers, utilizing official time, office space, utilities, equipment, and the services of her judicial assistant.  Count I(A) also alleged that Judge Hawkins used her position to promote her business by: (1) selling and offering to sell Gaza Road Ministries products in her courtroom to

lawyers appearing there; (2) selling and offering to sell those products in the courthouse to persons over whom she had disparate influence and authority; (3) offering to sell the products to attorneys appearing before her in chambers on court business; (4) promoting the sale of the products on a website in which she appeared in photographs wearing her judicial robes; and (5) knowingly using her judicial assistant to produce and promote the sale of Gaza Road Ministries products during working hours.

Count II(A)(1) alleged that Judge Hawkins maintained an idiosyncratic system of justice in which she would go off the record to avoid having coercive discussions recorded, to prevent the preparation of a full record, and to avoid the recording of inappropriate comments or the sound of magazine pages turning during trial. Count II(A)(2) alleged that Judge Hawkins took measures to coerce compliance with her system of justice. Count II(B) alleged that Judge Hawkins failed to comply with sales tax laws. Count II(C) alleged that she paid her judicial assistant to assist in the operation of the business but failed to report that pay to taxing authorities and to the Judicial Qualifications Commission. Count II(D) alleged that she violated Florida law by failing to register Gaza Road Ministries under the Florida Fictitious Name Act.

Count III(A) alleged Judge Hawkins failed to act in a manner that promotes public confidence by presiding over a criminal case in which she instructed the

defendant to contact one of three lawyers and tell them Judge Hawkins sent her. Count III(B) alleged that Judge Hawkins was observed openly reading magazines when presiding over jury trials and, when doing so, was inattentive to objections by counsel. Count IV(A) alleged that Judge Hawkins failed to devote full attention to her judicial office by using what she viewed as "free time" in judicial chambers to conduct her for-profit business and to schedule business appointments. Count IV(B) alleged that Judge Hawkins was often absent, resulting in disruption to those who appeared before her.

Count V(A) alleged that Judge Hawkins exhibited a lack of candor and ignored the applicable law in responding to the charges brought by the Commission. Count V(A)(1) alleged that on the morning of her scheduled deposition, Judge Hawkins deleted financial information from her private business computer, which records had been subpoenaed for production at the deposition. Count V(A)(2) alleged that she misled the Commission with regard to efforts to keep her private business separate from her judicial duties and from the duties of her judicial assistant, and that Judge Hawkins worked extensively on her business at her judicial office and encouraged her judicial assistant to do the same. Count V(A)(3) alleged that Judge Hawkins misled the commission investigator and

forensic computer expert with regard to the existence of flash drives[1] that were ordered produced by a Commission subpoena and by order of the Hearing Panel chair, Judge Paul L. Backman, and that she refused to turn over flash drives listed in the order. Count V(A)(4) alleged that without any legal basis Judge Hawkins refused to turn over financial data ordered by Judge Backman. Count V(A)(5) alleged that Judge Hawkins misled the Commission with regard to payments made to her judicial assistant. Count V(B) alleged that Judge Hawkins' responses to the Commission at the "rule 6(b) hearing,"[2] at her deposition, and in response to discovery requests created a pattern of conduct demonstrating refusal to comply with lawful authority, misleading by incompleteness, and lacking the candor expected of a judicial officer.

In response to the original Notice of Formal Charges, Judge Hawkins admitted selling and offering to sell her Gaza Road Ministries book in her courtroom and in the courthouse, but she denied that she sold them to persons over

---

1. Flash drives, also referred to as jump drives or thumb drives, are electronic data storage devices that are plugged into a USB port on a computer and often used to transfer files from one computer to another.

2. Under Rule 6(b), Investigative Panel Rules, Judicial Qualifications Commission Rule, the judge has a right to be present or to be heard during an investigation prior to the Investigative Panel determining that probable cause exists to initiate formal charges. A second rule 6(b) hearing was held prior to issuance of the Notice of Amended Formal Charges.

whom she held disparate authority. She also admitted that her Gaza Road Ministries website contained photographs of her wearing a judicial robe, but denied that it was done to promote her private interest. In her response to the charges, Judge Hawkins asserted that she created and edited the Gaza Road Ministries materials on her own time using her own equipment, and that her judicial assistant did not work on the book during working hours at work. Judge Hawkins denied that her participation in Gaza Road Ministries was ever to the detriment of prompt and efficient administration of justice. Finally, she contended that Gaza Road Ministries has enhanced and improved her judicial performance. In response to the Notice of Amended Formal Charges, Judge Hawkins denied knowingly using her judicial assistant to help produce and promote the sale of Gaza Road Ministries products during working hours, and denied that she misled the Commission concerning payments made to her judicial assistant. Judge Hawkins denied using court resources in the operation of her business, and contended that any such use was de minimis. She also denied that involvement with her business has caused her to devote less than full time to her judicial duties.

The facts concerning Judge Hawkins' background and judicial service were presented during this proceeding. She was first elected to the county court bench in 1996 and has been re-elected ever since. She has served in all divisions of county court, which include traffic, misdemeanor, civil and administrative. She

serves with four other county court judges and handles one-fifth of the docket. In 2008, she wrote a self-published book and in the fall of 2010, started Gaza Road Ministries as an additional source of income for charitable works. As the Hearing Panel noted, Judge Hawkins has dedicated her life to public service and has been actively involved in the community and in charitable works.

Prior to the formal charges being filed in this case, the Commission Investigative Panel met with Judge Hawkins pursuant to a notice of investigation to take her unsworn statement regarding the allegations brought against her. On November 16, 2012, Judge Hawkins appeared before the Commission Investigative Panel at the rule 6(b) hearing and told the panel that she was careful in attempting to separate her judicial and business activities. She contended that she never pressured anyone to buy her book, and sold it only to persons with whom she had a personal relationship or who were personal friends, and that she kept a fairly meticulous list of purchasers. She denied using State resources to operate her business and explained that she paid her judicial assistant separately for work performed by her for Gaza Road Ministries. The Notice of Formal Charges was then filed on December 5, 2012.

In the course of the investigation, the Commission issued a subpoena duces tecum to Judge Hawkins to produce twenty categories of documents at her deposition that was scheduled for February 19, 2013. The documents related to

persons to whom Gaza Road Ministries products were sold, financial records reflecting the income and expenses of the business, records reflecting income, gifts, or loans given by Judge Hawkins to her judicial assistant, and tax schedules and forms. In answer to the subpoena, Judge Hawkins agreed to produce the Gaza Road Ministries e-mails and dedicated laptop, IRS 1099 forms issued to her judicial assistant, and her official calendars. Judge Hawkins responded that she had not deleted any materials on her personal dedicated laptop other than Commission pleadings and work product, and asserted that she had made no loans to her judicial assistant. Judge Hawkins stated that she was unable to respond regarding any gifts, and that income paid to her judicial assistant would be reflected on the 1099 forms.

The deposition of Judge Hawkins was held on February 19, 2013, at which Judge Hawkins refused to produce e-mails relating to Gaza Road Ministries, her dedicated computer, and any federal 1099 forms reflecting payment to her judicial assistant. Significantly, when Judge Hawkins was asked about the requested financial documents related to Gaza Road Ministries, she responded that she had a Quicken software program on her Gaza Road Ministries laptop, but said "I deleted whatever financial information had been put into the Quicken program, and I did that this morning." She also refused to provide her tax return and tax forms or to answer the question of where the Gaza Road Ministries account was located. At

the deposition, she admitted that she received approximately $13,500 in income from the business but refused to provide any records. She also admitted that Gaza Road Ministries was a fictitious name that was not registered as such. When asked if she thought that having her photograph on her business website depicting her wearing her judicial robe was improper, Judge Hawkins stated, "I will not answer that question."

When asked at her deposition about income or gifts to her judicial assistant, Judge Hawkins responded that the income would be reported on a federal 1099 form, which she refused to produce, and that she had no independent recollection of giving her judicial assistant any gifts, including cash gifts, over $50. However, after the deposition was concluded, and after her judicial assistant was deposed, Judge Hawkins returned to the deposition room and disclosed that for many months she has given her judicial assistant approximately $48 or $49 dollars[3] each month to reimburse her for payments the judicial assistant made into a deferred compensation account.[4]

---

3. The amount, shown on copies of checks written on the Gaza Road Ministries account to Judge Hawkins' judicial assistant, was actually $42.49 or $42.50.

4. Judge Hawkins explained that she believed it was extremely important for her judicial assistant to establish this retirement account and thus gave her monthly sums to enable her to do so.

After the deposition, the Judicial Qualifications Commission obtained an order preventing the further destruction of evidence and an order compelling production of documents that had previously been requested in the "Florida Judicial Qualifications Commission's Request for Production of Documents to Judge Judith Hawkins." In addition to the subpoena duces tecum for deposition, the Commission requested her to produce a number of documents and records related to the business.[5] Judge Hawkins responded to the request for production by refusing to produce personal e-mails related to Gaza Road Ministries and refusing to produce her personal computer, portable hard drives, flash drives, or electronic storage devices containing records of her business. She objected to producing tax returns, 1099 forms, or any financial information, contending that they exceeded the scope of the investigation. She also refused to produce a list of persons to whom her book was sold. The Commission later filed a second motion to compel when Judge Hawkins failed to produce all the documents required to be produced

_____

5. The requested documents included e-mails between Judge Hawkins and her judicial assistant on the Leon County Courthouse work computer concerning Gaza Road Ministries; personal e-mails between Judge Hawkins and her judicial assistant concerning the publications and scheduling of non-court travel and private appearances related to the business; portable computer hard drives or flash drives concerned with the business; a record of business-related materials that were deleted from the work computer or the private computer or storage device; tax forms related to the business or the judicial assistant's services to the business; financial records reflecting income, loans, or gifts to the judicial assistant; and a list of persons to whom the business publications were sold.

under the first order to compel. The motion alleged that Judge Hawkins would not produce materials evidencing operation of her business, the identity of those to whom she sold her materials in the courthouse, materials showing her scheduling, and records pertaining to her business and her publications which were deleted from her private computer, and certain other records and electronic storage devices that had been connected to her computers. Judge Hawkins ultimately produced her computers and other documents for inspection.

As part of the investigation, the Commission retained Marc Yu, a forensic computer examiner who performs digital forensic analysis of computer drives. He was provided four computers to inspect, including the office desktop computer in Judge Hawkins' office, a personal laptop computer from her office, a personal laptop from her home, and the office desktop computer in her judicial assistant's office. Yu confirmed that the Quicken log on Judge Hawkins' personal computer had been opened on February 19, 2013, at 5:17 a.m., and that by 5:20 a.m., the Quicken log had been reduced essentially to nothing, but there was no way he could determine the amount of data that had previously existed on it. He testified he also discovered that 55 separate ESDs, which are electronic storage devices such as USB flash drives or thumb drives, had been plugged into Judge Hawkins' computers. Yu said that when asked about them, Judge Hawkins responded that she did not have any flash drives, a statement Judge Hawkins denied making.

Based on the deletion of the financial files from her laptop, the Commission entered an order to prohibit any further destruction of evidence and, after a hearing on the second motion to compel, the Hearing Panel Chairman ordered Judge Hawkins to turn over a list of flash drives and other documents. She produced a number of flash drives and an external hard drive, as well as a list of purchasers of her book and Gaza Road Ministries financial records for 2012 and 2013, but not those for 2010 and 2011.

A final hearing was held October 7-9, 2013, before the Hearing Panel comprising the Chairman and five Commissioners. Judge Hawkins was represented by counsel, as she had been throughout the proceedings.

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS**
**OF THE HEARING PANEL OF THE FLORIDA**
**JUDICIAL QUALIFICATIONS COMMISSION**

The Hearing Panel issued its "Findings, Conclusions and Recommendations of the Hearing Panel, Florida Judicial Qualifications Commission" on January 27, 2014. After considering all the evidence presented, the Hearing Panel concluded that Judge Hawkins was guilty of violation of Count I(A) in that she operated a private, for-profit business, from which she derived substantial income, from her judicial chambers using official time and judicial resources. The Hearing Panel also concluded that she used her judicial position to promote Gaza Road Ministries by selling and offering to sell Gaza Road Ministries products in the courthouse to

persons over whom she had disparate influence and authority, including lawyers who appeared before her and various courthouse employees. The Hearing Panel found Judge Hawkins guilty of promoting the sale of Gaza Road Ministries products on a website that included photographs of her in her judicial robes, and guilty of knowingly using her judicial assistant to promote and produce the Gaza Road Ministries products during working hours.

Judge Hawkins was also found guilty of the violations alleged in Count II of the Amended Notice of Formal Charges in failing to comply with Florida tax laws in the sale of her products and failing to register Gaza Road Ministries as a fictitious name. She was found not guilty of the charges that she maintained an idiosyncratic system of justice known as "Hawkins' law" and that she used coercive measures to effect compliance. The Hearing Panel concluded that "Hawkins' law" was nothing more than two basic rules—"know your judge" and "don't annoy your judge." The Hearing Panel also found Judge Hawkins not guilty of failing to properly report to the appropriate taxing authorities and the Commission the full amount of payments made to her judicial assistant for her assistance in the operation of the business. The Hearing Panel concluded that monies given to her judicial assistant to reimburse her for payments into the judicial assistant's deferred compensation account were gifts, and taxes were not due from Judge Hawkins on those payments.

The Hearing Panel found Judge Hawkins guilty of violations alleged in Count III that she was openly observed reading magazines, which Judge Hawkins later characterized as legal materials, during court proceedings and covering up her inattentiveness by asking counsel to rephrase the question. Judge Hawkins was found not guilty of the charge that her actions in advising a defendant, who was about to enter a plea, to contact one of three named lawyers and tell them "Judge Hawkins sent you" failed to promote public confidence in the judiciary.

As to Count IV, the Hearing Panel found that Judge Hawkins' explanation that she and her judicial assistant had a great deal of free time and used that time to operate the business in part from chambers proved that Judge Hawkins failed to devote full time and attention to her judicial office. The Hearing Panel found Judge Hawkins not guilty of the charge that taking time away from her court duties was to the detriment of prompt and efficient administration of justice. She was also found not guilty of taking trips and vacations during her trial weeks and not informing parties or attorneys in a timely fashion, to the detriment of the parties and attorneys.

Finally, as to Count V, the Hearing Panel found Judge Hawkins guilty of exhibiting a lack of candor before the Commission, ignoring the requirements of law, and evading lawful orders of the Hearing Panel by deleting subpoenaed financial records on the morning of her deposition; misleading the Investigative

Panel in her appearance before the Panel and her subsequent deposition concerning her efforts to keep her private business separate from her judicial duties; misleading the Commission investigator and its forensic computer expert with regard to flash drives that were ordered produced; refusing to turn over financial data required by the Hearing Panel Chair's order when requested; and misleading the Investigative Panel with regard to payments made to her judicial assistant, and only admitting to such payments after her deposition. Also as to Count V, the Hearing Panel found Judge Hawkins guilty of providing responses at the 6(b) hearing, her deposition, and in response to discovery that created a pattern of conduct demonstrating a refusal to comply with lawful authority and lacking the candor expected of a judge. She was found guilty of obstructive behavior, untruthful answers, and attempts to repeatedly frustrate and obfuscate discovery, reflecting an intentional disregard for the rules of procedure applicable to this action.

## FINDINGS OF FACT

The Hearing Panel found that Judge Hawkins was guilty of the above counts based upon its findings of fact. The Hearing Panel found, as Judge Hawkins stated in her response to the formal charges, that in 2008 she wrote a self-published book and later started her business, Gaza Road Ministries, which facilitated the sale of the book and other writings and which promoted Judge Hawkins as a speaker. The

Hearing Panel found that the business was established for mainly charitable purposes. Judge Hawkins explained that she was excited about the publication of her book and talked about it at the courthouse. At the hearing held before the Hearing Panel, two assistant public defenders testified that once in her chambers to discuss a plea, Judge Hawkins was signing copies of her book and showed it to the attorneys, making it clear that the book was for sale. A supervisor in the Clerk's Office testified that Judge Hawkins came into the Clerk's Office carrying some books and told others in the office that the books were for sale. A receptionist and administrative assistant in the courthouse testified that Judge Hawkins sat down by her desk and, in the course of the conversation, mentioned that she had written a book. The receptionist was a passing acquaintance of the judge and bought the book because she was interested in the subject.

The Hearing Panel found, as Judge Hawkins acknowledged, that she sold a book to an attorney appearing before her in open court who had asked her about the book and requested a copy. Judge Hawkins accepted $15 for a copy of the book at that time. Another attorney testified that he had a conversation with Judge Hawkins in the courthouse hallway in which she mentioned that she had a book for sale, which the attorney purchased although he was not really interested in the subject. He testified he did not want to offend the judge.

The Commission investigator, Al Beiner, testified about the Gaza Road Ministries website where Judge Hawkins appeared in photographs wearing her judicial robe and where she mentioned her position as a Leon County judge. The books, study guides, tracts, and souvenirs shown on the website linked to an order page for the business products.

Records subpoenaed from the State computer system reflected that Judge Hawkins' judicial assistant set up her own not-for-profit corporation to conduct business with Gaza Road Ministries. The record disclosed 205 e-mail communications on the State computer between Judge Hawkins, her judicial assistant, and persons interested in the business's products and services. Many of the e-mails were copied to the judicial assistant's corporation. The investigator also obtained a CD of 885 e-mails from the judicial assistant's business and testified that they showed a significant amount of Gaza Road Ministries business being conducting during court workdays.

The investigator testified that Judge Hawkins refused to make her personal laptop available for inspection and that she admitted that on the morning of her deposition she had deleted the Gaza Road Ministries financial files in the Quicken program from the computer. This testimony was augmented by the testimony of Mark Yu, the forensic computer examiner, who found by examining Judge Hawkins' personal computer that on February 19, 2013, at 5:17 a.m., Judge

Hawkins deleted data from her Quicken program, reducing the data in the program to "nothing," and that she told him she did not have any flash drives.[6] Further examination of the computers showed that numerous flash drives had been inserted into the computer in the past. The Commission investigator testified that after orders to compel, Judge Hawkins produced a total of nineteen flash drives for inspection.

Portions of Judge Hawkins deposition were read into evidence at the hearing in which she initially refused to make her Gaza Road Ministries e-mails available to the investigator and refused to make her personal laptop available for inspection. In the deposition, she admitted deleting the Quicken files and refused to release any income tax information pertaining to income she received from Gaza Road Ministries. She refused to provide information concerning IRS 1099 forms reporting income to her judicial assistant's corporation, and refused to tell the Commission's counsel the location of the bank account for Gaza Road Ministries.

The Commission investigation disclosed, and it is undisputed, that Judge Hawkins did not pay State sales tax on the sale of Gaza Road Ministries products. In 2013, after the proceeding had commenced, she did pay the State Department of

---

6. Even though Judge Hawkins denied that she told Yu she did not have any flash drives, the Hearing Panel stated that it found the testimony of Yu and Beiner more credible on this subject.

Revenue sales tax for the years 2012 and 2013. It is also undisputed that Judge Hawkins failed to register her unincorporated business name under the Florida Fictitious Name Act, section 865.09, Florida Statutes, although she later did so. When asked at her deposition about her failure to register the fictitious name, she responded that she hoped she did not need to but "[i]f I do, oops, I haven't."

As to the charge that Judge Hawkins was observed reading magazines in court and not paying attention, the Hearing Panel heard testimony from an Assistant State Attorney who had been assigned to practice in front of Judge Hawkins. She had observed Judge Hawkins reading a magazine during trial. She also observed other attorneys trying cases in front of Judge Hawkins, and testified that often when attorneys made objections, it appeared that Judge Hawkins would continue to read a magazine or other material and would "wave" them along without a ruling. When they asked to be heard, Judge Hawkins would sometimes explain that she was not listening. A misdemeanor division supervisor with the Office of the State Attorney who routinely observed prosecutors practicing in Judge Hawkins' courtroom also testified that on numerous occasions he observed Judge Hawkins reading a magazine and flipping pages during voir dire and trial testimony. The managing court reporter that reported digitally recorded proceedings in Judge Hawkins' court testified that in transcribing digital records from Judge Hawkins' courtroom, the court reporters would often have to report

portions as "inaudible due to Judge's mike being turned away," and that when advised of this problem, Judge Hawkins explained she did so to avoid the sound of magazine pages being turned. The Hearing Panel found these facts but rejected the assertion that she went off the record in order to defeat appellate review.

As to the charge that Judge Hawkins devoted less than full time to her judicial duties, Judge Hawkins explained that she is often out of the office during court working hours because, if she had no trials or hearings, she would go home. She further explained that when e-mails showed her working on Gaza Road Ministries business during court working hours, she might have been doing so from home, but that if she was needed at court or to sign a warrant, she always made herself available. The Hearing Panel found that this conduct demonstrated that Judge Hawkins believes her time is her own when she is not in court, and constitutes less than full time devotion to judicial duty. However, the Hearing Panel rejected the assertion that Judge Hawkins was often absent during trial weeks, creating disruption or prejudice to the parties.

In its findings of fact, the Hearing Panel noted that in the 6(b) hearing held November 16, 2012, before the Investigative Panel, Judge Hawkins appeared and made a statement not under oath that she was meticulous in trying to separate judicial and business activities and that persons to whom she sold her books in the courthouse were personal friends who, for instance, she would invite "when [she]

had a birthday party." She also told the Investigative Panel that she kept a fairly meticulous list of purchasers. These assertions were shown to be erroneous by evidence at the later evidentiary hearing that persons who were merely courthouse acquaintances had purchased the book at the courthouse, and that the list she ultimately provided—after first refusing to disclose it—included some purchasers by first name only, and Judge Hawkins did not always know their full names.

The Hearing Panel noted an e-mail in evidence that was sent from Judge Hawkins' Gaza Road Ministries e-mail account to the business e-mail account of her judicial assistant on April 6, 2011, at 2:13 p.m., directing her judicial assistant to "learn about self-publishing" so they could select a publishing company. The e-mail also asked her judicial assistant, "How do you charge me? Must be different from others b/c you get much done during work day." Investigator Beiner prepared reports analyzing the volume of e-mails relating to Gaza Road Ministries generated by Judge Hawkins and her judicial assistant during work hours, which analysis showed that Judge Hawkins regularly accessed her private e-mail from her State computers, and the Hearing Panel found that she "likely" did a significant amount of work relating to Gaza Road Ministries while occupying a state office.

## CONCLUSIONS OF LAW OF THE HEARING PANEL

The Hearing Panel concluded based on the evidence that Judge Hawkins' actions in operating a private business in significant part from her judicial chambers, linking the sale of her products to her judicial office by depicting herself wearing judicial robes on the business website, and using State time and resources to promote her business violated Canons 1, 2B and 5D of the Code of Judicial Conduct. Canon 1 provides that judges personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved. Canon 2B provides in pertinent part that a judge shall avoid impropriety and the appearance of impropriety and thus shall not lend the prestige of judicial office to advance private interests. Canon 5D of the Code of Judicial Conduct provides in pertinent part that a judge shall not engage in financial and business dealing that may reasonably be perceived to exploit the judge's position or involve the judge in frequent transactions or continuing business relationships with lawyers or other persons who are likely to come before the court on which the judge serves.

The Hearing Panel concluded that Judge Hawkins' conduct violated Canons 1 and 2A of the Code of Judicial Conduct by her failure to pay sales tax on the sale of Gaza Road Ministries products and by her failure to register her business under the Florida Fictitious Name Act. The Hearing Panel concluded these same Canons were also violated by Judge Hawkins' conduct in repeatedly evading and

- 23 -

frustrating discovery, deleting subpoenaed records, misleading the Investigative Panel and the Commission investigator, and refusing to turn over financial data and flash drives when ordered by the Hearing Panel. The Hearing Panel also concluded this conduct demonstrated a lack of candor required of judges.

Based on these findings of fact and conclusions of law, the Hearing Panel found that the case presented a very close call between the sanctions of removal and discipline, and opted to recommend discipline in the form of a reprimand, a three-month suspension without pay, and a $17,000 fine. This decision was based in part on the fact that Judge Hawkins had charitable motives in operating her business and had a lengthy judicial career and exemplary conduct for many years.

After issuance of the Hearing Panel's order, this Court ordered Judge Hawkins to show cause why the recommended discipline should not be followed, but after further consideration of the record, we issued a second order to show cause why removal is not the appropriate sanction. In response to that order to show cause, Judge Hawkins asserted in part that her obstructive conduct during the investigation was the result of "a moment when my faith instructed me, like many other litigants, to hold fast to my innocence and fight the good fight." The Judicial Qualifications Commission response countered that intentional misrepresentation, destruction of evidence, and obstruction of justice do not constitute the "good fight." Thus, we turn to our analysis of the evidence, the findings of the Hearing

Panel, and our own determination of the appropriate and necessary sanction in this case.

## ANALYSIS

The Court will independently review the Commission's findings "to determine if they are established by clear and convincing evidence." Turner, 76 So. 3d at 901. This quantum of proof is an intermediate standard, more than "a preponderance of the evidence," but less than "beyond and to the exclusion of a reasonable doubt." In re Holloway, 832 So. 2d 716, 726 (Fla. 2002). This intermediate level of proof involves both a qualitative and quantitative standard. "The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." Id. We have noted the significance of the fact that "the JQC is in a position to evaluate the testimony and evidence first hand." Turner, 76 So. 3d at 901 (quoting In re Graziano, 696 So. 2d 744, 753 (Fla. 1997)). Moreover, and particularly applicable to this case, where multiple violations are found, "the cumulative weight of the improprieties [may] support removal." In re Henson, 913 So. 2d at 593 (Fla. 2005) (bracketed material added).

"This Court has emphasized that the object of disciplinary proceedings is not for the purpose of inflicting punishment, but rather to gauge a judge's fitness to

serve as an impartial judicial officer." In re McMillan, 797 So. 2d 560, 571 (Fla. 2001) (citing In re Kelly, 238 So. 2d 565, 569 (Fla. 1970)). In making this determination, judges should be held to higher ethical standards than lawyers "by virtue of their position in the judiciary and the impact of their conduct on public confidence in an impartial justice system." Id. Where "the judge's conduct is fundamentally inconsistent with the responsibilities of judicial office," removal may be the only appropriate sanction. See id. (quoting In re Graziano, 696 So. 2d at 753).

We have carefully reviewed the entire record of this proceeding and conclude that clear and convincing evidence supports the Hearing Panel's factual findings and its conclusions that Judge Hawkins violated Canons 1, 2A, and 5D of the Code of Judicial Conduct. Clear and convincing evidence demonstrated that she regularly used court resources, including the services of her judicial assistant, for Gaza Road Ministries business at work and during working hours. Judge Hawkins explained in her February 19, 2013, deposition, which was admitted into evidence at the hearing, that speaking engagement requests relating to Gaza Road Ministries may have come to her at work because that was the only way the requestor had to contact her. When asked if her judicial assistant handled those during working hours, Judge Hawkins responded that she had "no independent recollection" of how her judicial assistant did the work and had no recollection

"one way or the other" about telling her judicial assistant not to work on Gaza Road Ministries business in the courthouse.

Judge Hawkins told the investigator that she used her State computer as a repository for her Gaza Road Ministries records and texts because she feared that if that material was only on her laptop, it might get stolen. Testimony by investigator Beiner and forensic examiner Yu established that a significant number of Gaza Road Ministries e-mails were routed through or placed on the work computers of Judge Hawkins and her judicial assistant.

Evidence clearly established that Judge Hawkins showed her book to attorneys in her chambers and made clear it was for sale. She accepted payment from an attorney for one of her books while on the bench. She offered her book to another attorney in the courthouse hallway. Judge Hawkins testified at the hearing that three or four attorneys bought her book, as well as some judicial assistants, some court administration personnel, a judge, two bailiffs, an employee in the probation department, and some court clerks. She did not know all the names of those to whom she sold the book, and defended her noncompliance with the order to compel a complete list of purchasers by saying she was under no obligation to create anything, but just to provide what information she had. This conflicted with her earlier statements to the Investigative Panel that she kept a "fairly meticulous list" of those persons to whom she sold the book.

Pursuant to subpoena, 205 e-mails were found on court computers between Judge Hawkins, her judicial assistant, and persons interested in the Gaza Road Ministries materials or services. An analysis of other Gaza Road Ministries e-mails disclosed that a significant percentage of those e-mails were sent or received during work hours. Judge Hawkins testified that she might have been at home when many of the e-mails were written because if she had no hearings and her calendar was clear, she would usually stay home and not go into the office for part of the day. Based on this evidence, the Commission correctly found that Judge Hawkins thought her time was her own during the workday. Her conduct in this regard showed that Judge Hawkins devoted less than full time to her judicial duties.

Clear and convincing evidence supported the conclusion that Judge Hawkins violated Canon 1 by failing to maintain and enforce high standards of conduct and personally observe those standards by her failure to pay state sales tax on the sale of her business products and failure to register the name of her business under the fictitious name law. Clear and convincing evidence also established that Judge Hawkins' failings in this regard also violated Canon 2A, requiring respect and compliance with the law. Judge Hawkins acknowledged that she had not paid State sales tax on the sale of her books and had not registered her business under

the fictitious name statute, section 865.09, Florida Statutes (2013), which constitutes a second-degree misdemeanor.

The Hearing Panel had before it clear and convincing evidence that Judge Hawkins linked the sale of her business products to her judicial office by her appearance on her website in judicial robes, which lent the prestige of the judicial office to advance private interests. This conduct violated Canon 5D, which prohibits judges from engaging in business dealings that may reasonably be perceived to exploit the judicial position. Judge Hawkins acknowledged that she appeared on her business website in photographs depicting her in her judicial robes.

We also conclude that Judge Hawkins' conduct during the investigation violated Canons 1 and 2A by her lack of candor required of a judge. Lack of candor is exhibited when a judge gives materially misleading and incomplete statements during a deposition, refuses to answer relevant questions during the investigation, and refuses to turn over relevant documents after being ordered to do so, as Judge Hawkins did in this case. Especially distressing is Judge Hawkins' conduct in deleting Gaza Road Ministries financial data in the early morning hours of the day of her deposition after that data had been subpoenaed and after Judge Hawkins had originally agreed to produce it. This act alone is clear and

convincing proof of Judge Hawkins' extreme lack of candor in these proceedings.[7] This act alone violated the basic requirement of Canon 1 that a judge "shall personally observe those high standards [of conduct] so that the integrity and independence of the judiciary may be preserved." This act alone was a serious violation of Canon 2A that a judge "shall respect and comply with the law." Compliance with the law includes compliance with the rules of procedure that govern this proceeding and with the lawful orders of the Investigative Panel and the Hearing Panel. Noncompliance, obfuscation, and avoidance of those rules and orders are not justified by a judge regardless of whether the judge personally believes the investigation is unwarranted.

At the hearing, Judge Hawkins testified that she was offended that the Commission and the investigator sought to look at her financial records, and said, "Why would you expect me to give you the information to investigate me?" Concerning the Judicial Qualifications Commission's request for a list of purchasers of her book, she testified, "You're the one who said that I sold the books. Surely you should have gone around and figured out who I sold them to."

---

7. We have explained that lack of candor may be the basis for discipline only where the lack of candor is formally charged, the Commission makes particularized findings on specific points in the record concerning lack of candor, and the lack of candor is knowing and willful. See In re McAllister, 646 So. 2d 173, 177 n.2 (Fla. 1994) (citing the three-prong test set forth in In re Davey, 645 So. 2d 398, 405 (Fla. 1994)). This three-prong test was met in this case.

Judge Hawkins called the request for production of the documents a fishing expedition, although she ultimately provided the purchaser information in the form that she kept it, which did not always include last names, after motions and orders to compel. The record establishes by clear and convincing evidence that Judge Hawkins sought to frustrate the discovery of materials relevant to the investigation, which were subpoenaed or the subject of a request for production, and which were ordered to be produced pursuant to two motions to compel.

We consider a judge's deceit or dishonesty to be a very serious factor in determining an appropriate sanction. In the case of In re Ford-Kaus, 730 So. 2d 269 (Fla. 1999), that judge was removed for violations that included misrepresentations and untruthful statements to a client before becoming a judge, and untruthful statements to the Investigative Panel about the matters in issue. See id. at 273-75. We later referred to our Ford-Kaus decision in In re Eriksson, 36 So. 3d 580 (Fla. 2010), where we noted that we had "factored dishonesty into [our] decision to remove [Ford-Kaus] from office." Id. at 591. Judge Hawkins' misstatements to the investigating attorney and Investigative Panel, her deletion of subpoenaed financial information from her computer on the morning of her deposition, and her denial that she had flash drives are all forms of deception that can be equated to deceit or dishonesty for purposes of determining if removal is a proper sanction in this case.

In the case of In re Henson, 913 So. 2d at 587, we also noted that deception or deceit are important factors bearing on a judge's fitness because "[t]he judicial system can only function if the public is able to place its trust in judicial officers." Id. (quoting In re Ford-Kaus, 730 So. 2d at 277). Removal is an appropriate discipline where the actions of the judge simply "should erode confidence in the judiciary," even where it does not appear that the public has lost confidence, and even where the Hearing Panel has recommended a lesser sanction than removal. In re Sloop, 946 So. 2d at 1055 (quoting In re LaMotte, 341 So. 2d 513, 518 (Fla. 1977)). In In re LaMotte, this Court removed the judge based on his use of a state-issued credit card for personal trips, even though the judge testified that he thought the personal charges would be deducted from his salary and he made restitution, and in spite of ample good character testimony. 341 So. 2d at 518.

We are fully mindful that the Hearing Panel found that Judge Hawkins has a generally exemplary record as a dedicated public servant who cares about others and who has been efficient and innovative in dispensing justice. We are also aware that Judge Hawkins operated her Gaza Road Ministries business primarily as a charitable enterprise, with good intentions. The Hearing Panel found that these mitigating factors played a large part in the "close call" whether to remove or simply discipline Judge Hawkins. Nevertheless, we have found removal the appropriate sanction in cases where the judge has good character and a strong

record, such as the case of <u>In re Henson</u>. There, we stated, "We have previously removed judges despite strong character evidence or an unblemished judicial record when their misconduct was fundamentally inconsistent with the responsibilities of judicial office or struck at the heart of judicial integrity." 913 So. 2d at 593. We explained that "Judge Henson's trustworthiness, competence, and strong work ethic both as an attorney and judge, cannot overcome the grievous nature of the violations." <u>Id.</u> at 592-93.[8]

Similarly in this case, we are constrained to conclude that Judge Hawkins' prior record of service and good intentions cannot overcome the grievous nature of the violations in this case. While sale of her book to employees and lawyers in the courthouse, standing alone, would not justify removal, we cannot ignore the fact that Judge Hawkins employed court resources in the operation of her business for a lengthy period of time and failed to see that such conduct was improper under the Canons of Judicial Conduct. Moreover, even in the response to our final order to show cause, Judge Hawkins maintained a defensive posture concerning her conduct in refusing to answer questions and refusing to provide investigatory

---

8. The cases cited by Judge Hawkins in her response to our second order to show cause are inapposite, in that they did not involve a series of violations or a lengthy investigation thwarted by obfuscation and frustration of discovery of relevant investigatory materials ordered produced by the Judicial Qualifications Commission.

materials, even after issuance of an order to compel.  In defending her conduct, Judge Hawkins asserted that her faith instructed her to hold fast to her innocence and "fight the good fight."  We agree with the Commission that obfuscation and frustration of proper discovery, and refusal to answer questions posed by the Investigative Panel, Judicial Qualifications Commission counsel, the Investigator, and the Hearing Panel, do not constitute fighting the "good fight."  The Canons require a judge to personally observe high standards of conduct so that the integrity of the judicial system may be observed.  See Canon 1, Code of Judicial Conduct. The Canons also require a judge to comply with the law.  See Canon 2A, Code of Judicial Conduct.  These Canons were violated by Judge Hawkins' conduct in this case.

In past cases, this Court has also given favorable consideration to a judge's acceptance of responsibility for his or her actions, such as occurred in In re Holloway, 832 So. 2d at 729, and In re Schwartz, 755 So. 2d 110, 113 (Fla. 2000). However, in the present case, Judge Hawkins did not show acceptance of responsibility for her actions, or acknowledge their impropriety, until her response to the second order to show cause why removal from office is not the appropriate sanction.  Only in her final words in that response did Judge Hawkins state "I apologize to the Investigative Panel of the FJQC for my responses, to all of the people that were affected by my actions, and to all the Justices of this Court."

- 34 -

While this statement extends an apology, albeit a belated one given only when faced with the possibility of removal, it fails to accept responsibility for her actions or acknowledge their impropriety. Further, Judge Hawkins' apology fails to overcome the grievous nature of her conduct during this proceeding, which was "fundamentally inconsistent with the responsibilities of judicial office" and which "struck at the heart of judicial integrity." In re Henson, 913 So. 2d at 593.

Removal is proper when clear and convincing evidence is presented that the judge has engaged in "conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office." Art. V, § 12(c)(1), Fla. Const.; see also In re Albritton, 940 So. 2d 1083, 1088 (Fla. 2006). We must gauge Judge Hawkins' present fitness to hold office in light of the cumulative nature and seriousness of the violations proven in this case. See, e.g., In re Henson, 913 So. 2d at 593. When we do so, we conclude that Judge Hawkins' conduct is fundamentally inconsistent with the responsibilities of judicial office, demonstrating present unfitness to hold office, and that removal is the only appropriate sanction in this case.

**CONCLUSION**

For the reasons set forth herein, we find, based on clear and convincing evidence, that Judge Judith W. Hawkins violated Canons 1, 2A, and 5D of the Code of Judicial Conduct, and that those violations cumulatively warrant the most

severe sanction that we impose today.  Accordingly, we hereby remove Leon County Judge Judith W. Hawkins from the office of county judge, effective when this decision becomes final.  It is our hope that this decision will serve as a reminder to judges of their continuing obligation to personally observe the high standards of conduct mandated by the Code of Judicial Conduct, and to conduct themselves in all things in a manner that will demonstrate candor and preserve the integrity and independence of the judiciary.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.
QUINCE, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Original Proceeding – Judicial Qualifications Commission

Ricardo Morales, III, Chair, Michael Louis Schneider, General Counsel, Tallahassee, Florida, and Gregory Robert Miller, Special Counsel, Beggs & Lane, RLLP, Tallahassee, Florida, and David Lee McGee, Special Counsel, Beggs & Lane, RLLP, Pensacola, Florida, and Lauri Waldman Ross, Counsel to the Hearing Panel, Ross & Girten, Miami, Florida, and James A. Ruth, Chair, Hearing Panel, Jacksonville, Florida,

for Judicial Qualifications Commission, Petitioner

Gerald Kogan, Coconut Grove, Florida,

for Judge Judith W. Hawkins, Respondent