PER CURIAM.
In this case, we review the Second Findings and Recommendation of Discipline of the Florida Judicial Qualifications Commission (JQC) that recommends Judge R. Timothy Shea receive the sanction of a public reprimand with the additional requirement that Judge Shea send letters of apology to those individuals indentified in the notice of amended formal charges and continue to obtain mental health treatment as recommended by his doctor and family therapist. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons that follow, we approve the JQC’s findings and recommended discipline.
I. BACKGROUND
Judge Shea of the Ninth Judicial Circuit took office in January 2007. In September *416 2010, the Investigative Panel of the JQC determined that there was probable cause to instigate formal proceedings against Judge Shea. After an investigation, Judge Shea and the JQC entered into a stipulation pursuant to rule 6(j) of the Florida Judicial Qualifications Commission Rules, in which Judge Shea agreed to not contest the factual allegations against him or the JQC’s findings and recommendations. On June 1, 2011, the JQC filed in this Court its original Findings and Recommendation of Discipline and a copy of the original stipulation. The stipulation set forth that in a number of instances between January 2007 and July 2010, Judge Shea exhibited a pattern of rude and intemperate behavior, and in its recommendation, the JQC proposed that Judge Shea be sanctioned by public reprimand.
In October 2011, this Court issued an order rejecting the parties’ stipulation and disapproving the proposed sanction of a public reprimand. This Court explained that it would impose a sixty-day suspension without pay and administer a public reprimand. This Court further directed that it would require Judge Shea to write and mail letters of apology to those individuals identified in the stipulation and to continue mental health counseling for his temper. This Court’s order gave the parties the option to accept the Court’s suggested discipline or to proceed to a hearing before the JQC. Judge Shea and the JQC did not agree to a revised consent judgment consistent with this Court’s enhanced sanctions, and thus, the JQC withdrew its Findings and Recommendation of Discipline and the stipulation.
Thereafter, the JQC hired a special counsel to further investigate the charges against Judge Shea and to submit a report to the JQC. After reviewing the special counsel’s report and additional evidence, the Investigative Panel of the JQC determined that probable cause did not exist to proceed on six of the original eleven allegations in the notice of formal charges. Accordingly, in December 2012, the Investigative Panel served Judge Shea with a notice of amended formal charges.
The Investigative Panel and Judge Shea then entered into a second stipulation, in which Judge Shea admitted to the factual allegations in the notice of amended formal charges. Specifically, Judge Shea does not contest the following allegations as set out in the notice of amended formal charges and the second stipulation:
[1.] In the summer of 2007, Assistant State Attorney Sarah Freeman was sitting in the jury box with two other attorneys making notes on her pretrial docket while [Judge Shea addressed] a matter that was not hers. When [Judge Shea] observed her shake her head, [Judge Shea] got up out of [his] seat, stood behind [his] chair and screamed loudly at her for what [he] perceived as disrespectful conduct.
[2.] In 2007, during an off-the-record sidebar argument by Assistant State Attorney Camelia Coward regarding a plea to the bench, [Judge Shea] remarked to the opposing attorney, “Do you know what I do when my wife and I disagree? I just let her talk.” [Judge Shea] continued, “I find that it is best just to let her talk until she’s finished.” [Judge Shea] then indicated that, once she is finished, you can do what you want anyway.
[3.] On August 18, 2009, in State [v.] Habeych, Case No. 48-2008-CF-12888-0, [Judge Shea] sentenced Mr. Habeych without his attorney present. This was done over his objection. Mr. Habeych was charged with Trafficking in Hydro-morphone, which carries a minimum mandatory sentence. [Judge Shea] imposed the mandatory minimum sen *417 tence. [Judge Shea] then told [Mr. Habeych’s] father that if he had any questions that he could go upstairs to the courtroom where the defense lawyer was appearing before another judge.
[4.] In State v. Bullock, Case No. 48-2009-CF-8037-0, [Judge Shea] granted a Judgment of Acquittal on one of the counts of an Information alleging Possession of a Firearm by a Convicted Felon. That count had been severed for a separate trial from another count of the Information charging the defendant with Grand Theft of a Motor Vehicle. At the subsequent trial call, on April 12, 2010, when Assistant State Attorney Stephen Brown announced his intention to proceed on the remaining count, [Judge Shea] mistakenly believed the State did not have a good faith basis to proceed on that charge. [Judge Shea] became visibly angry and reprimanded the attorney in open court by saying his duty was to act in an ethical manner and to follow his oath as an attorney rather than merely follow office policy guidelines of the State Attorney’s Office. [Judge Shea] then ordered him into the jury room where [Judge Shea] continued to berate his ethics. To [Judge Shea’s] credit, when [Judge Shea] realized [his] mistake, [Judge Shea] then apologized.
[5.] These repeated actions constitute conduct unbecoming a judicial officer and lack the dignity appropriate to judicial office, with the effect of bringing the judiciary into disrepute.
[Second] Stipulation at 3-4, Inquiry Concerning a Judge, Timothy R. Shea, No. 10-265, SC11-1067 (Fla. filed Dec. 11, 2012).
As to mitigating factors, the second stipulation explains that while Judge Shea apologizes for his misconduct and realizes that “he is the only one to blame,” the Investigative Panel acknowledged that— based on the trial transcripts — “it was patently obvious Judge Shea’s intemperate conduct frequently followed inappropriate or unprofessional conduct from lawyers, some of whom may have been seeking to aggravate Judge Shea and cause him to lose his temper.” Id. at 4. The second stipulation further notes in mitigation that beginning in early 2007, Judge Shea experienced a particularly stressful time in his personal life stemming from a family member’s mental illness and that, since the time of his misconduct, Judge Shea has sought professional treatment and counseling for his temper, sought the advice and counsel of experienced and respected judges in his circuit, and according to a colleague, improved his courtroom behavior, becoming less emotional and more deliberative on the bench. Id. at 4-5.
Based on the facts set out in the second stipulation, the JQC filed a Second Findings and Recommendation of Discipline. Without identifying which canons of the Code of Judicial Conduct Judge Shea violated, the JQC determined that Judge Shea “engaged in inappropriate behavior in court and that such conduct is unbecoming a member of the judiciary, brings the judiciary into disrepute, and could have the effect of impairing citizens’ confidence in [Judge Shea] as a judge and in the integrity of the judicial system.” Second Findings and Recommendation of Discipline at 1, Inquiry Concerning a Judge, Timothy R. Shea, No. 10-265, No. SC11-1067 (Fla. filed Dec. 11, 2012). The JQC recommended, however, that Judge Shea not be suspended for his misconduct. The JQC reasoned that due to the significant mitigating factors in this case, particularly the “substantial positive efforts voluntarily taken by Judge Shea to remedy his behavior,” id. at 3, a public reprimand accompanied by letters of apology and continuing *418 mental health treatment would be the appropriate sanction.
II. ANALYSIS
Article V, section 12 of the Florida Constitution provides that in the case of judicial misconduct, this Court “may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [JQC] and it may order that the justice or judge be subjected to appropriate discipline.” Art. V, § 12(c)(1), Fla. Const. (2012). “This Court reviews the findings of the JQC to determine whether the alleged violations are supported by clear and convincing evidence, and reviews the recommended discipline to determine whether it should be approved.” In re Woodard, 919 So.2d 389, 390 (Fla.2006). Where a judge stipulates to the JQC’s findings of fact, “no additional proof is necessary to support the JQC’s factual findings.” Id. at 390-91. In all judicial discipline cases, however, “the ultimate power and responsibility in making a determination to discipline a judge rests with this Court.” In re Renke, 933 So.2d 482, 493 (Fla.2006) (citing In re Angel, 867 So.2d 379, 382 (Fla.2004)). In this case, we approve the JQC’s findings and recommended discipline.
We approve the JQC’s determination that Judge Shea engaged in inappropriate behavior that was unbecoming a member of the judiciary. Canon 1 of the Code of Judicial Conduct directs: “A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved.” Similarly, Canon 3(B)(4) requires a judge to be at all times “patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity.”
On the occasions detailed in the second stipulation, Judge Shea’s behavior did not meet the high standard of conduct expected of Florida’s judges. Judge Shea’s intemperate courtroom behavior not only damaged public confidence in him as a judicial officer but struck “at the very roots of an effective judiciary, for those who are served by the coui'ts will not have confidence in and respect for the courts’ judgments if judges engage in this egregious conduct.” In re Schapiro, 845 So.2d 170, 174 (Fla.2003). Due to the demands of his or her position of trust and responsibility, a judge may not act in a manner unbecoming a member of the judiciary— even if provoked by the unprofessional behavior of those appearing before the judge. “The disparity in power between a judge and a litigant requires that a judge treat a litigant with courtesy, patience, and understanding.” In re Eastmoore, 504 So.2d 756, 758 (Fla.1987).
Both the severity of Judge Shea’s misconduct and the mitigating factors in his case are comparable to the misconduct and mitigation considered by this Court in Schapiro. Judge Schapiro admitted that that he engaged in a pattern of misconduct in violation of several canons of the Code of Judicial Conduct. Like Judge Shea, Judge Schapiro repeatedly lost his temper and made demeaning comments to counsel in open court before the public. Also, as in the instant case, some of Judge Schapi-ro’s intemperate comments had sexist overtones. In re Schapiro, 845 So.2d at 171-73. This Court refrained from suspending Judge Schapiro — instead administering a public reprimand and requiring letters of apology — due only to the mitigating evidence that Judge Schapiro voluntarily underwent behavioral therapy and committed to continuing treatment. Id. at 174.
*419 Here, too, were it not for the mitigating circumstances surrounding Judge Shea’s misconduct, particularly his self-initiated participation in anger management therapy and his appeals for guidance from more experienced members of the judiciary, this Court would more severely sanction Judge Shea. But in view of the smaller number of infractions as clarified by the second stipulation and Judge Shea’s successful and ongoing efforts to manage his temper and foster professionalism, we approve the recommendation of a public reprimand, to be administered by this Court at a future date. We further direct Judge Shea to— within thirty days of the filing of this opinion — write and mail personal letters of apology to those individuals identified in the second stipulation and to continue mental health treatment as recommended by his doctor and family therapist.
III. CONCLUSION
In summary, we approve the JQC’s findings and recommendation of a public reprimand, letters of apology, and continued mental health treatment. We order that Judge Shea appear before this Court for the administration of a public reprimand at a time to be set by the Clerk of this Court. See In re Frank, 753 So.2d 1228, 1242 (Fla.2000).
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.