# Supreme Court of Florida

_____

No. SC16-2103
_____

**INQUIRY CONCERNING A JUDGE, NO. 16-377
RE: SCOTT C. DUPONT**

September 6, 2018

PER CURIAM.

We have for review the recommendation of the Florida Judicial

Qualifications Commission (JQC) that Judge Scott C. DuPont of the Seventh

Judicial Circuit be removed from office for violations of the Code of Judicial

Conduct.  We have jurisdiction.  *See* art. V, § 12, Fla. Const.  We previously

entered an order in this case approving the JQC's recommendation of removal and

removing Judge DuPont from office.  *See In re DuPont*, No. SC16-2103, 2018 WL

3153686 (Fla. June 25, 2018).  This opinion follows.

## I.  BACKGROUND

Judge DuPont was elected to the Seventh Circuit bench in 2010.  At the

time, he was thirty-eight years old and had six years of legal experience.

## A. Charges

On November 23, 2016, the JQC filed a Notice of Formal Charges against

Judge DuPont. An Amended Notice of Formal Charges was filed on August 16,

2017. The amended notice alleged, in relevant part, the following violations of

canons 1, 2A, 3A, 3B2, and 7A,[1] of the Code of Judicial Conduct:

---

1. Canon 1 provides:

    An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Canon 2A provides:

A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Canon 3A provides:

    The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the specific standards set forth in the following sections apply.

Canon 3B(2) provides:

A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.

1.  While engaged in a contested election to retain judicial office, you had a campaign website created and maintained to assist in your election.  On the homepage of that website you had a tab devoted to your opponent entitled, "About Judge DuPont's Opponent."

If a viewer clicked on that tab, it took the viewer to a page where you posted the results of a search you obtained through an internet website, "Instant Checkmate."  Before a search can be conducted on the "Instant Checkmate" website, a caution notice appeared.  That notice stated in part, "Please BE CAREFUL when conducting a search . . . ."  At the bottom of this website's initial page the disclaimer stated, "*The information available on our website may not be 100% accurate, complete or up to date, so do not use it as a substitute for your own due diligence, especially if you have concerns about a person's criminal history.*"

In spite of those warnings, and instead of taking any steps to verify the scandalous information about your opponent found on the website, you recklessly posted the results of the search under the heading "*Do You Trust [Malcolm Anthony] to be your Circuit Judge?*"  Those unsubstantiated and unverified entries included:

a.  A suggestion that your opponent employed aliases, when in fact you had no information that he did so.

b.  A suggestion that there existed "Imposter Information" about your opponent, which implied he had

Canon 7A provides, in pertinent part:

(3) A candidate for a judicial office:

 . . . .

(e) shall not:

(i) with respect to parties or classes of parties, cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office; or

(ii) knowingly misrepresent the identity, qualifications, present position or other fact concerning the candidate or an opponent[.]

posed as an imposter. You did this with no information that would justify the inclusion of the listing for any other purpose than to impugn your opponent.

     c. Your posting of the entries stated that your opponent had received three parking tickets for parking in a handicapped zone, yet you never verified whether your opponent personally received the tickets or if it was a third party using his vehicle. In response to the 6(b) Notice of Investigation in this inquiry, you only produced two such tickets. To compound the inappropriate imputation, the heading of the entries listed "booking dates" that suggested there was an arrest associated with those entries, which was not accurate.

     d. You posted information that stated that your opponent's wife had been arrested 3 times, and his daughter had been arrested 21 times. You did nothing to verify the accuracy of those statements and you posted this information in spite of not even knowing the identities of your opponent's wife or children.

2. Your website implied that your opponent's legal name change was an attempt to hide his past by stating that he was managing member of HideYourPast.com in 2013, and then stating that he changed his legal name. Your opponent's name change was legally completed in 1990, but nowhere did you provide that information.

3. At a televised candidate forum, you asserted facts about your opponent's driving record that were not accurate, and you did nothing to verify the information. Rather, you relied on an e-mail from a person working on your campaign that suggested your opponent received a ticket for passing a school bus while it was loading or unloading children. In response to the 6(b) Notice of Investigation in this inquiry, you were unable to provide any documentation to substantiate your assertions.

    . . . .

5. During the same forum, you announced your position that it is not the role of a circuit court judge to determine whether a given statute is unconstitutional, because that would be "legislating from the

bench." You further stated that you have refused to find statutes unconstitutional and that "[i]f they don't like the decision, they can appeal it." In doing so you announced your position that you would not find any statute to be unconstitutional. Previously upon assuming your judicial office, you had sworn under oath to uphold the Constitution of the United States and the Florida Constitution.

6. Prior to making public the material critical of your opponent, you were advised not to publish the material by two judges, on two separate occasions. On one of the occasions, you were advised to be certain of the accuracy of the information.

7. You attended a required Judicial Ethics Advisory Committee training session at the outset of the 2016 judicial campaign. The session specifically included instruction that compliance with the law, the Code of Judicial Conduct, and the Election Code, were solely your responsibility, not that of campaign managers or others. Notwithstanding this instruction, you included in your response to the initial 6(b) investigation hearing notice that you relied on your campaign manager for guidance regarding the claims about your opponent.

. . . .

10. In May 2016, you presided over first appearance hearings in Putnam County during the extended Memorial Day weekend. Your judicial assistant circulated e-mails to court personnel advising that, for the three-day holiday period, first appearance hearings would commence at 7:00 a.m. on Saturday, 7:00 a.m. on Sunday and 6:30 a.m. on Monday. Your judicial assistant apologized in an e-mail to court personnel, explaining that Judge DuPont had "27 places to be in (4) counties over these (3) days or the early times would not be necessary."

You were at the time campaigning for reelection inasmuch as your opponent had announced his intention to run against you for your circuit seat a month earlier.

On Saturday, May 28, you conducted the first appearance hearings at 6:30 a.m. instead of 7:00 a.m. as your judicial assistant had advised. When you conducted the hearings, there were no lawyers present for either the State of Florida or the Public Defender's Office. You proceeded to handle all matters that morning without counsel.

You significantly increased the bonds of some defendants without counsel.

. . . .

12. In 2011, you served over the family law division in Putnam County. A party appeared before you and asserted an inability to pay support. You ordered the deputy sheriff to search the individual to determine if there was anything of value on his person, and directed that the deputy seize the money that was in his possession.

Judge DuPont responded to the amended notice. As to paragraphs 1-3 and 5, Judge DuPont admitted that he was "careless" in not personally confirming the accuracy and source of the information he disseminated about his opponent, Malcolm Anthony, and the Anthony family but stated that he would show that he acted "in good faith, with the belief that the information was accurate." As to paragraphs 6 and 7, Judge DuPont denied the allegations as framed and stated that he "at all times believed the information published was accurate" and "acted in good faith." As to paragraph 10, Judge DuPont denied the allegations as framed. He admitted that he started the first appearance hearings on Saturday, May 28, 2016, early but stated that "is common over a holiday weekend," he conducted the hearing appropriately "within his judicial discretion," that only two bonds were raised, and that he appointed the public defender to represent those charged. As to paragraph 12, Judge DuPont denied the allegations as framed but admitted "that he enlisted the assistance of the deputy in divesting the party of assets in his

- 6 -

possession" and stated that he was attempting to ensure that the party complied with the law and precedent relating to his obligation to support his family.

## B. Findings of the JQC

After an evidentiary hearing before the JQC's Hearing Panel, the JQC issued its findings and recommendation of discipline on February 15, 2018.

## 2011 Family Court Hearing

In April 2011, approximately four months into his first term, Judge DuPont presided over a hearing involving support of a minor child. When Judge DuPont questioned the absence of a certificate for successful completion of a parenting class, the husband explained that he did not take the class because he lacked the necessary funds. Judge DuPont then ordered his bailiff to search the husband for money. The search yielded $180, which the man claimed he was holding for someone else. Judge DuPont immediately turned the $180 over to the wife, ordering it credited to outstanding child support.

The court-ordered search was reported by law enforcement officers to Judge Terrill J. LaRue, then administrative judge for the Seventh Circuit. Judge LaRue thought that Judge DuPont had simply made a rookie mistake. He explained to Judge DuPont that he had employed "a very poor procedure" which should not be used again. Judge LaRue was taken aback when Judge DuPont insisted, "I can do that" and "we do that all the time in St. Johns County."

Judge DuPont testified before the panel that he had directed several such searches previously, but never did so again after this incident. He stated that in ordering such a search, he was acting in the best interest of children who are in need of support.

The JQC found Judge DuPont guilty of this charge, found in paragraph 12 of the amended notice.

**Dissemination of False and Misleading Information About the Anthonys**

In 2015, Judge DuPont qualified for a second judicial term. In preparation for his campaign, Judge DuPont certified that he had "received, read, and unders[tood] the requirements of the Florida Code of Judicial Conduct" and he attended a candidate election forum held by the Judicial Ethics Advisory Committee (JEAC). During the forum, candidates were reminded that compliance with Florida's Code of Judicial Conduct and Florida Statutes was the candidate's responsibility and that candidates could not rely on campaign managers or others for compliance.

For the 2016 campaign, Judge DuPont hired Maureen France, an experienced campaign consultant already in the midst of handling multiple campaigns for other judicial candidates. According to France, Judge DuPont sought "opposition research" on his opponent, Anthony. France recommended Bill Tavernier, a researcher with whom she was acquainted, to conduct that research.

France told Judge DuPont she would relay any information Tavernier discovered but that it would be up to Judge DuPont to determine its validity. Judge DuPont suspected that Anthony changed his name for meretricious reasons and was running from financial problems, and he sought research on Anthony's name change and "different legal problems he may have had." France emailed Tavernier a list of topics that the judge wanted researched.

Tavernier performed two hours of research, pulling information off various websites. Among these websites was InstantCheckmate.com, a subscription service "originally created as a resource for online daters." Tavernier also pulled up "case history-type" reports from clerk of court websites. Tavernier located Anthony's name change but did not notice that the petition for name change was filed by both Anthony and his wife. Tavernier searched Anthony's name on sunbiz.org, and found him listed as the manager of a former Florida limited liability company, known as "Hideyourpast.com llc," which had been administratively dissolved three years earlier. Tavernier did not determine what the purpose of the company had been.

In June 2016, Tavernier emailed to France documents regarding Anthony's name change and other documents with a note stating that "other violations were all in Duval. St. Johns consists of speeding, school bus and again driving with an expired tag," all of which France promptly forwarded to Judge DuPont. Tavernier

admitted that his "research" was cursory at best and not vetted. He testified that he was not requested to and did not pull underlying documentation. His reference to a school bus in his email to France may have been "meant for someone else" since he was working on several projects simultaneously.

The 1990 petition for name change filed by Malcolm Anthony Neundorfer, was joined in by his wife, Andrea Lynette Neundorfer. Evidence adduced from Andrea Anthony reflected there was nothing nefarious about this name change, which dropped the difficult to pronounce Neundorfer, in favor of Anthony's then middle name. Hideyourpast.com was an internet business created as part of Anthony's law practice, which processed information for persons eligible to have criminal records sealed or expunged.

Judge DuPont did nothing to verify the information provided by Tavernier. He testified that he relied on France and Tavernier to determine its accuracy and that France confirmed its accuracy multiple times. France attested to the opposite; she made it clear to Judge DuPont when she was hired that she "wasn't really going to be involved" and would simply pass on research for the judge's review and decision. She testified that Judge DuPont never questioned, and she never confirmed, the accuracy of the information she relayed to him.

In July 2016, Judge DuPont filled out a League of Women Voters questionnaire, and asked France to review his following proposed response:

Character, Honesty, Integrity, Common Sense, and Experience distinguishes me from my opponent, Malcolm Anthony. I have brought to the bench and maintained the highest morals, values, and ethical standards. My opponent, Malcolm Anthony, has been ticketed twice for parking in handicapped parking without a permit, he has been ticketed once for speeding in a school zone, and he has been ticketed once for passing a school bus while it was loading children. He is a current member of www.hideyourpast.com, which is a website that you join to hide your personal history, he has changed his legal name . . . .

France asked Judge DuPont if he was sure that he wanted to include specifics in his response, since, she said, "I don't know that we know the specifics for example if the school bus had children on it, etc." France also tried to talk Judge DuPont out of posting materials she forwarded from Tavernier on his campaign website, concerned that use of unvetted materials could get them all in trouble. France tried to dissuade Judge DuPont from using these materials "many times." After discussions with the designer of the campaign website, France took the step of requesting that Judge DuPont execute a "hold harmless" agreement protecting her and the web designer. The agreement provided that the DuPont campaign "shall fully defend, indemnify, and hold harmless" France and the web designer "from any and all claims, lawsuits, demands, causes of action, liability, loss, damages and/or injury, of any kind whatsoever." Judge DuPont insisted that the information be posted on the website but refused to sign the agreement.

Judge DuPont also discussed the negative information about Anthony with two other judges before he posted it on the website. Judge McGillin cautioned

Judge DuPont that "you need to be very, very sure of the information that you have before you use it." Judge DuPont told Judge Foxman that he possessed information reflecting that Anthony had numerous traffic issues, including "citations for parking in a handicapped zone, something to do with a school bus moving violation," and that Anthony had changed his name and was "somehow affiliated with a website that would conceal your identity or your past." Judge Foxman advised Judge DuPont that the use of such materials was "unnecessary" in his opinion because Judge DuPont was winning handily. But when it became readily apparent that he was not going to be able to talk Judge DuPont out of using the materials, Judge Foxman warned Judge DuPont to make sure the information "was both true and accurate." Judge DuPont responded that "his campaign people . . . were experienced at this." Judge DuPont testified that during several conversations he and Judge Foxman had about the campaign, Judge Foxman "never told me not to use it" and "there came a time where he indicated that he doesn't see how I can't use it." Judge Foxman testified that this was "not true," and he said nothing remotely close to that during their discussions.

In late July 2016, Judge DuPont's campaign website went up with a picture of Anthony under the caption "About Judge DuPont's Opponent." To the right of the photograph, appeared the following statements:

- HideYourPast.com Managing Member 2013, with an asterisk noting, "All information obtained from public records and websites,"

- Changed his Legal Name SCROLL TO PAGE 4 BELOW

To the right of the picture, immediately below these statements, bold print queried, "*Do You Trust Malcolm Anthony to be your Circuit Court Judge?*" Judge DuPont's campaign website listed "imposter information," suggesting Anthony was using "aliases." It connected Anthony's name change to "HideYourPast.com," insinuating that Anthony had secrets in his past that he sought to conceal. It indicated that Anthony had received three parking tickets for parking in a handicapped zone, with associated "booking dates," suggesting arrests when there were none. As "Possible Matching Arrest Records for Family/Known Associate," the website listed three arrest records for Andrea Anthony and twenty-one arrest records for Elizabeth Anthony, the candidate's then-twenty-one-year-old daughter. Neither had ever been arrested. Elizabeth is a second lieutenant serving with the Army Corps Reserves, and, at the time the information was posted on Judge DuPont's campaign website, was enrolled in veterinary school in Gainesville, Florida.

Judge DuPont admitted only to "mistakes" and "carelessness," and denied violating the judicial canons, including canon 7, on the basis that he did not "knowingly" or intentionally disseminate false information. He claimed he relied

on France and Tavernier for the accuracy of the information. The panel concluded that it is impossible to reconcile Judge DuPont's testimony with the testimony of other witnesses, documentary evidence, and his own admissions. The panel found that the timing and content of emails between Judge DuPont and France supported France's account that the judge knew she was not going to be vetting any of the research provided, that it lacked detail, and that it should not be used. The panel concluded that Judge DuPont's explanation why he did not sign the "hold harmless" agreement, which was because he had "no idea" why France's name appeared on the agreement and she was unable to explain, defies logic and common sense. The panel found that Judge DuPont clearly knew that France and the web designer requested the agreement's execution to protect them from the repercussions of his decision to publish the unvetted information about Anthony. Judge DuPont also ignored the warnings of Judges McGillin and Foxman and decided to post unvetted information impugning Anthony, and his wife and daughter, despite certifying that he understood the judicial canons, attending the JEAC seminar, and receiving multiple warnings from his own campaign manager and two judicial colleagues.

The JQC found Judge DuPont guilty of the allegations found in paragraphs 1-3 and 5-8 of the amended notice.

## The Televised Candidate Forum

A televised judicial candidate forum for the Seventh Circuit was held on July 26, 2016. Judge DuPont, Anthony, and Judge McGillin all participated in the forum. The moderator first asked the candidates, "Why should voters support you rather than your opponent?" Anthony responded by recounting his thirty-three years of experience practicing law "in every conceivable field," teaching law at two universities and police academies, his experience as a prosecutor and special prosecutor, and his "AV preeminent" rating by Martindale Hubbell for legal ability and ethics. He invited the public to compare his resume with Judge DuPont's. Judge DuPont took the microphone immediately thereafter, responding:

> Thank you very much. Let's talk about the facts.
>
> Fact one: I've presided over 30,000 cases since I've been serving as your circuit court judge, my opponent has presided over zero.
>
> Fact number two: I have maintained the highest ethical, moral, and value standards on the bench as I have been serving as your circuit court judge.
>
> Fact number three: My opponent has been ticketed twice for parking in handicapped parking without a permit.
>
> Fact number four: My opponent has been ticketed once for speeding in a school zone.
>
> Fact number five: My opponent has been ticketed for passing a school bus while it was stopped and loading children.
>
> Fact number six: My opponent has changed his legal name.
>
> Fact number seven: My opponent is a current member of www.hideyourpast.com. That's H-I-D-E-Y-O-U-R-P-A-S-T dot com.

And for those of you who don't know what that is, it's a website you join to hide your personal history.

 . . . .

Those are the facts ladies and gentlemen.  Thank you.

Later, the moderator asked each candidate to describe their judicial

philosophy substantively.  Judge DuPont responded:

> Thank you very much.  I know that this sounds cliché, but-uh, my philosophy is to not legislate from the bench.
> I don't believe that the Constitution is living and breathing.  And I don't believe that it evolves on its own.  I believe that our founders knew exactly what they were doing when they created it—and that they created a mechanism whereby it can be changed.
> And to be quite honest with you, uh, there have been numerous [sic] where I have actually been asked by attorneys to find that [a] statute is unconstitutional.  I have refused to do that, because my thought process is there's another way to do that.
> If they don't like the decision they can appeal it, and it can start going up the food chain to do it that way.
> But even though I've been asked to find a statute unconstitutional as a sitting judge, I have refused to do so.  Because again, it's not my job to legislate from the bench.

During closing argument, Judge DuPont stated,

[T]he question that you have to walk away from tonight is this: Who do you trust?  Do you trust me?  Or do you trust my opponent, who again, has received two tickets for parking in handicapped without a permit, he's been ticketed for speeding in a school zone, he's been ticketed for passing a school bus without—while it was loading the children, he's also a current member of HideYourPast.com.

And walk away with this: Please remember what he said. HideYourPast.com is a website you go to erase your criminal history.[2] He's a member.

The panel concluded that Judge DuPont never had a single public record reflecting that Anthony was ticketed for speeding in a school zone or for passing a school bus while it was loading children. Judge DuPont later attributed this charge to information provided by France via phone, but he claimed that he "didn't remember" France's emailed warning against using such unknown specifics.

After the televised judicial forum, Judge McGillin became concerned that "there was something terribly wrong" and he might have just witnessed ethics violations. Judge McGillan ran Anthony's name through the Duval County Clerk's CORE record system (at "attorney access" level[3]), and although multiple violations of parking in handicapped spaces popped up, the underlying documents revealed ordinary parking tickets. It took Judge McGillin only "a click of the mouse" to determine that the database search used to obtain information about Anthony "hadn't gotten into the details."

---

2. Anthony had previously responded that "HideYourPast.com is a website to help people seal and expunge criminal records. It is a legitimate business. It just has a good name that attracts customers."

3. The "attorney access" level used by Judge McGillin is greater than access granted the general public, but less than "judicial access" afforded to judges.

The panel concluded that Judge DuPont's statement about his "judicial philosophy" violated canon 7. By definition, Judge DuPont's oath of office required his determination of a statute's constitutionality when the issue came before him in a proper case, but Judge DuPont publicly pledged at the televised forum to hold no statute unconstitutional and to require litigants to appeal.

The JQC found Judge DuPont guilty of the allegations found in paragraphs 3 and 5 of the amended notice.

**First Appearances Memorial Day Weekend 2016**

On May 25, 2016, Judge DuPont's judicial assistant notified necessary personnel, including attorneys from the state attorney's and public defender's offices, that Judge DuPont would be handling first appearances during the upcoming Memorial Day weekend. The next day, at Judge DuPont's direction, his judicial assistant notified the same people that the time of first appearances on Saturday and Sunday had been moved up from 9 a.m. to 7 a.m., which was due to Judge DuPont's campaign-related obligations that weekend.

On Saturday, May 28, 2016, with no notice to anyone, Judge DuPont began the 7 a.m. first appearance hearings at 6:30 a.m. and conducted them without counsel in attendance. Judge DuPont admittedly ignored the requirements of Florida Rule of Criminal Procedure 3.130(a)—which requires the attendance of

counsel at first appearance proceedings—and was unable to explain why he started the proceedings early in the absence of counsel.

The panel found Judge DuPont guilty of this charge, found in paragraph 11 of the amended notice.

### Character and Fitness

Judge DuPont called numerous live character witnesses and offered letters and affidavits from others attesting to his fitness. The panel found that by all accounts, Judge DuPont is a hard-working judge, who gave willingly of his time, and was extraordinarily efficient. He is interested in children, established the first truancy court in Putnam County, and created a series of forms in different legal areas to help pro se litigants navigate the legal system.

Judge Terrence Perkins, Chief Judge of the Seventh Judicial Circuit from June 2013 through June 2017, testified that he received *far* more complaints about Judge DuPont than any other judge, which were mostly related to "heavy handedness." Judge Perkins refused to assign Judge DuPont to a criminal division, fearing that such heavy-handedness might lead to excessive or inappropriate incarcerations. Instead, he transferred Judge DuPont to the civil division to take him "out of the firing line" and place him in a position where "he wasn't putting people in jail all the time." Judge Perkins initially attempted to address problems directly with Judge DuPont, but this proved ineffective because Judge DuPont

"would say the right things; it just didn't seem to change the behavior." Judge Perkins then reached out for assistance from other judges, notably Judge Alexander, Judge DuPont's judicial mentor.

Judge Wendy Berger, a former Seventh Circuit judge who was elevated to the Fifth District Court of Appeal in 2012, rendered a qualified opinion that Judge DuPont was fit to serve, but should be sanctioned if the allegations regarding the election were proven.

Like Judge Berger, Judge Carlos Mendoza, a federal judge and former Seventh Circuit judge, offered a qualified opinion regarding Judge DuPont's fitness. Although he testified that he never saw any evidence of "heavy handedness" from Judge DuPont, Judge Mendoza was disappointed about the negative information Judge DuPont posted about Anthony on his website and the wallet search during the 2011 family court hearing, but he urged sanctions short of removal, because he likes Judge DuPont and thinks he has "a good heart."

Hubert Grimes, a retired Seventh Circuit judge, testified that Judge DuPont is "a good man," who has an "excellent reputation" for truth and veracity.

James Alexander,[4] a lawyer practicing in St. Johns County who had appeared before Judge DuPont, described Judge DuPont's first year as "kind of

_____

4. James Alexander is a cousin of Judge John Alexander, Judge DuPont's mentor.

shaky"; he said that Judge DuPont was "pretty tough," "rough around the edges," "heavy-handed," overbearing, that he overreacted on occasion, did not appear to know what he was doing, and failed to listen to lawyers and litigants. But Alexander opined that Judge DuPont "grew into the job," improved, and became more receptive after a period of twelve to eighteen months, in which he went from a "D-" judge to an "A+" judge.

Judge DuPont's judicial mentor, Judge John Alexander, testified that Judge DuPont is the hardest working judge in the Seventh Circuit. He characterized Judge DuPont as "efficient, dedicated . . . diligent" and a "straight shooter" who was doing an "excellent job." Judge Alexander was not in touch with Judge DuPont during the 2016 campaign and was unfamiliar with the campaign website. Judge Alexander opined that Judge DuPont was presently fit to serve but characterized his conduct as "befuddling."

## II. ANALYSIS

"This Court reviews the findings of the JQC to determine whether the alleged violations are supported by clear and convincing evidence . . . ." *In re Shea*, 110 So. 3d 414, 418 (Fla. 2013) (quoting *In re Woodard*, 919 So. 2d 389, 390 (Fla. 2006)). "This quantum of proof is an intermediate standard, more than 'a preponderance of the evidence,' but less than 'beyond and to the exclusion of a reasonable doubt.' " *In re Hawkins*, 151 So. 3d 1200, 1212 (Fla. 2014) (quoting *In*

*re Holloway*, 832 So. 2d 716, 726 (Fla. 2002)).  "If the findings meet this intermediate standard, then they are of persuasive force and are given great weight." *In re Turner*, 76 So. 3d 898, 901 (Fla. 2011) (quoting *In re Graziano*, 696 So. 2d 744, 753 (Fla. 1997)).  We have noted that any conflicts in the evidence should be resolved in favor of the JQC's findings.  *In re Henson*, 913 So. 2d 579, 591-92 (Fla. 2005).

## A.  Undisputed Charges

As a preliminary matter, Judge DuPont does not appear to dispute the JQC's findings with respect to the charges alleged in paragraph 5 of the amended notice, alleging a violation of canon 7 by promising not to find statutes unconstitutional,[5] or paragraph 10 of the amended notice, alleging violations of canons 1, 2A, and 7A by holding first appearances without counsel present.  Those charges are supported by audio or video evidence of the alleged violations.  Judge DuPont expressly admitted wrongdoing regarding holding first appearance hearings without counsel present.  Because the JQC's findings are undisputed and Judge DuPont has

_____

5.  Although Judge DuPont admits to making this statement, he asserts that he does not believe this statement violated canon 7 because he did not mean that he would never find a statute unconstitutional, only that he does not go into a case looking to overturn a statute but instead presumes statutes are constitutional.  We reject this argument.  Judge DuPont made the statement in a very public forum and failed to take any steps to correct the statement even after he realized that he "screwed up."

admitted this misconduct, we conclude that the findings are supported by clear and convincing evidence. *See In re Murphy*, 181 So. 3d 1169, 1176 (Fla. 2015) (citing *In re Diaz,* 908 So. 2d 334, 337 (Fla. 2005); *In re Andrews,* 875 So. 2d 441, 442 (Fla. 2004)); *In re Kinsey,* 842 So. 2d 77, 85 (Fla. 2003)).

## B. Dissemination of False and Misleading Information About the Anthonys

Judge DuPont admitted that he acted inappropriately in failing to personally verify the negative and false information he disseminated about Malcolm Anthony and his family during the 2016 judicial campaign, but Judge DuPont claims that while he was "careless," he did not "knowingly" violate the canons of judicial conduct because he did not "know" that the information was false and believed it was accurate. He testified that he relied completely on France and Tavernier to provide him accurate information and admitted doing "absolutely nothing" to verify any of the information. We reject Judge DuPont's reasoning that he did not "knowingly" disseminate false information or misrepresent information about Anthony because he did not have personal knowledge that the information was false.

Not only did Judge DuPont fail to verify the accuracy of the information he was provided as was his obligation, but it also appears that Judge DuPont actually manufactured some of the facts he disseminated in relation to that information. For example, Judge DuPont stated that Anthony was a "current member of

- 23 -

www.hideyourpast.com, which is a website that you join to hide your personal history." First, hideyourpast.com LLC was administratively dissolved in 2013, three years before Judge DuPont made the statement that Anthony was a "current member." Second, while Anthony had been a managing member of the LLC prior to 2013, there is nothing in the record to indicate that he personally used the services of the LLC, the purpose of which was to help people seal and expunge criminal records in connection with Anthony's law practice.

Judge DuPont also posted "Possible Matching Arrest Records for Family/Known Associate[s]" of Anthony on his website. The website listed three arrest records for a person named Andrea Anthony and twenty-one arrest records for a person named Elizabeth Anthony. Andrea Anthony is the name of Anthony's wife, and Elizabeth Anthony is the name of his then twenty-one-year-old daughter. But neither of them had ever been arrested and thus could not be the individuals identified in the website. At the hearing, Judge DuPont testified that he did not *know* that Andrea and Elizabeth were relatives of Anthony; he stated that he thought they were *possible* family members. He admitted being only "careless to the point that [he] should have known that it was family." Judge DuPont's "careless" actions with respect to Anthony's wife and daughter caused the potential for harm to both of them. There is clear and convincing evidence in the record to support the JQC's finding that such "carelessness" is inconsistent with a judge

acting in such a manner that promotes public confidence in the integrity of the judiciary and contrary to canon 2A.

We therefore conclude that there is clear and convincing evidence in the record to support the JQC's findings that Judge DuPont violated canons 1, 2A, and 7A by knowingly misrepresenting facts about the Anthonys during his 2016 campaign.

## C. The Search During the 2011 Family Court Hearing

With regard to the search during the 2011 family court hearing, Judge DuPont admits that the search and seizure occurred, but he emphasizes that it was not forceful and he felt that it was appropriate because other judges in the Seventh Circuit employed similar techniques. Judge DuPont's motives in conducting the search may have been "pure" as he claims, but we have previously condemned such unlawful, judicially ordered seizures in open court, *see In re Turner*, 76 So. 3d 898, 906 (Fla. 2011), and we conclude that there is clear and convincing evidence in the record to support the JQC's findings that Judge DuPont violated canons 1 and 2A.

## D. Discipline

The JQC recommends that Judge DuPont be removed from office. Under article V, section 12(c)(1) of the Florida Constitution, we have discretion to either accept, reject, or modify the commission's findings and recommendation of

- 25 -

discipline. *In re Renke*, 933 So. 2d 482, 493 (Fla. 2006). "Although this Court gives the findings and recommendations of the JQC great weight, the ultimate power and responsibility in making a determination to discipline a judge rests with this Court." *Id.* at 493. We are authorized to remove a judge from office for "conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office." Art. V, § 12(c)(1), Fla. Const. "[T]he object of disciplinary proceedings is not for the purpose of inflicting punishment, but rather to gauge a judge's fitness to serve as an impartial judicial officer." *In re Dempsey*, 29 So. 3d 1030, 1034 (Fla. 2010) (alteration in original) (quoting *In re McMillan*, 797 So. 2d 560, 571 (Fla. 2001)).

> We examine judicial misconduct for present fitness to hold office "from two perspectives: its effect on the public's trust and confidence in the judiciary as reflected in its impact on the judge's standing in the community, and the degree to which past misconduct points to future misconduct fundamentally inconsistent with the responsibilities of judicial office."

*In re Murphy*, 181 So. 3d at 1177 (quoting *In re Sloop*, 946 So. 2d 1046, 1055 (Fla. 2006)). "It is clear that a member of the judiciary or judicial candidate should not [intentionally] mislead the public by placing factually incorrect statements in campaign materials." *In re Dempsey*, 29 So. 3d at 1033. And "[w]e have repeatedly placed judicial candidates on notice that this type of misconduct will not be tolerated." *Id.*

We have also repeatedly warned that we will not allow judges who have committed egregious misconduct during a judicial campaign in order to attain office to serve the term of their judgeship. *See In re Renke*, 933 So. 2d at 495; *In re McMillan,* 797 So. 2d at 573; *In re Alley*, 699 So. 2d 1369, 1369, 1370 (Fla. 1997). To do so "clearly sends the wrong message to future candidates; that is, the end justifies the means and, thus, all is fair so long as the candidate wins." *In re Renke*, 933 So. 2d at 495 (quoting *In re McMillan,* 797 So. 2d at 573).

Judge DuPont's assertion that he had no evil intent in disseminating the false information about Anthony is irrelevant. As stated in article V, "[m]alafides, scienter or moral turpitude on the part of a justice or judge shall not be required for removal from office of a justice or judge whose conduct demonstrates a present unfitness to hold office." Art. V, § 12, Fla. Const. Further, in holding first appearances early on the Saturday of Memorial Day weekend in 2016 without counsel present in order to suit his campaign schedule, Judge DuPont blatantly disregarded the rules of criminal procedure and disrespected the attorneys and the rights of the inmates involved in the proceeding. This behavior was not inadvertent, and Judge DuPont has offered no excuse or explanation for it. Judge DuPont's misconduct both negatively affects the public's trust and confidence in the judiciary and points to the potential of future misconduct fundamentally inconsistent with the responsibilities of judicial office.

Like Judges Renke, McMillan, and Alley, Judge DuPont committed egregious misconduct during his campaign to attain his office. Under these circumstances, we cannot allow Judge DuPont to serve the term of his judgeship. Based on the misrepresentations Judge DuPont made during his campaign to attain his office as well as the other instances of misconduct during his time in office, we conclude that Judge DuPont has demonstrated a present unfitness to hold office and approve the recommended discipline of removal from office.

## III. CONCLUSION

For the reasons set forth herein, we conclude that Judge DuPont's violations of the Code of Judicial Conduct warrant the most severe sanction of removal from office. Accordingly, Judge DuPont has been removed from office. The removal took effect on June 25, 2018.

It is so ordered.

CANADY, C.J., and PARIENTE, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.
LEWIS, J., concurs in result.

 NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – Judicial Qualifications Commission

Eugene Pettis, Chair, Fort Lauderdale, Florida, Michael Louis Schneider, Executive Director and General Counsel, Alexander J. Williams, Assistant General Counsel, Henry M. Coxe, III, Special Counsel, Judicial Qualifications Commission, Tallahassee, Florida; Brian T. Coughlin and Ashley W. Cox of Bedell, Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville, Florida; and Lauri

Waldman Ross of Ross & Girten, Counsel to the Hearing Panel of the Florida Judicial Qualifications Commission, Miami, Florida,

for Florida Judicial Qualifications Commission, Petitioner

Rutledge R. Liles and Pamela H. Klavon of Liles Gavin, P.A., Jacksonville, Florida,

for Judge Scott C. DuPont, Respondent